### WENTWORTH *v.* SMITH.

In an action on the case against a postmaster for negligence, by which a letter of the plaintiff was lost, evidence of specific acts of negligence in relation to other letters, is not admissible to prove negligence in respect to the letter in question.

THE declaration in case set forth, that on the 27th of March, 1860, and long before, the defendant was postmaster of the post-office at Lancaster, duly and lawfully appointed, and qualified, and acting in that capacity; that on the 2d day of December, 1859, one Lowell Wentworth, at Jackson, &c., properly inclosed thirty-four dollars, in current bank bills of that value, in cash, the property of the plaintiff, in a letter, duly sealed and directed to the plaintiff, at said Lancaster; that said letter thus directed, and containing said money, was then and there lodged in the post-office at Jackson, to be forwarded by mail according to said direction; that said letter, containing said money, was forthwith duly mailed at said post-office at Jackson, and came from thence by the United States mail to the post-office in Lancaster; and the plaintiff avers that it was the duty of the defendant, as postmaster of the post-office at Lancaster, to carefully keep said letter containing said money, and to deliver the same to the plaintiff, on request; but the defendant and his servants carelessly and negligently lost said letter, or delivered the same to some person not authorized to receive it, unknown to the plaintiff, so the said letter and the said thirty-four dollars, cash in it, never came to the plaintiff's hands or possession; whereby the plaintiff has wholly lost the same, &c. A second count in trover did not become material.

Under the general issue the plaintiff introduced evidence tending to prove the other facts stated in his declaration, upon which no question arises.

To prove that the letter in question was lost by the carelessness and negligence of the defendant and his servants, the plaintiff offered evidence to prove that letters received at the office were put into drawers of persons to whom they were not addressed, to which the lessees of the drawers had access, by means of keys kept by

themselves, and who took the same from the office, along with the letters addressed to themselves, and that other letters were delivered by the defendant or his assistant, to persons to whom they were not addressed.

To this evidence the defendant objected, because it did not tend to prove negligence or carelessness in reference to the letter in question, and because the defendant was not answerable for the negligence or carelessness of his assistant, duly appointed and sworn as such. But the court admitted the evidence. It appeared that the assistant employed in the office was duly appointed and sworn, and that most of the time, about the period of the loss in question, in consequence of the ill health of the postmaster, the duties of the office were performed by the assistant, but that the postmaster usually attended at the arrival of the principal mails, and that when present he attended to the assortment and distribution of the letters received, and assisted to deliver them until the first rush for letters and papers was over, when he usually went to his house, and left the care of the office to the assistant. Nine witnesses were called by the plaintiff, who proved instances, varying from one to four each, of deliveries of letters to persons not entitled to them, either through the boxes, or drawers, or otherwise, covering the whole term of four years during which the defendant was postmaster.

The court charged the jury that a postmaster is held only to ordinary care and diligence in the discharge of the duties of his office, and is liable only for losses occasioned by the want of such care. If the letter was delivered by mistake to a wrong person, stolen by a stranger, or embezzled by a clerk, or lost by any of the accidents unavoidable in the business of such an office, the postmaster is not responsible, and the loss must be the direct consequence of the negligence proved. The burden of proof of negligence, that is, the want of ordinary care and diligence, is upon the plaintiff; but that it is not indispensable, to enable the plaintiff to recover, to show any particular act of negligence in relation to the letter in question; but if the plaintiff show a general want of common care and diligence on the part of the defendant, either in the construction of his places of deposit for letters, so that they were unsafe, or in the management of the office, as by permitting persons to go behind the grating who had no right to be there, or by a careless and negligent assortment, or distribution, or a careless delivery of letters to persons to whom they were not addressed, or who were not authorized to receive them, or the like; and he also satisfies the jury that the letter and money in it were lost in consequence of the misconduct and negligence proved, the defendant would be liable.

The postmaster is not liable for the negligence of his assistants, duly appointed and sworn, unless he is himself liable to the charge of negligence in appointing or continuing in place unfit persons, after notice of their unfitness.

To the ruling and charge as to proof of general want of proper care and diligence, the defendant excepted.

The jury found a verdict for the plaintiff, and the defendant

moved that the verdict might be set aside by reason of said exceptions.

*Benton & Ray*, for the plaintiff.

*Burns & Fletcher*, for the defendant.

BELLOWS, J. The instructions were, in substance and effect, that it was not necessary to show any particular act of negligence in relation to the letter in question; but if the plaintiff proved a general want of common care and diligence in the assortment and delivery of letters, and the jury were satisfied that the plaintiff's letter was lost by reason of it, the defendant would be liable; in short, that proof of general want of care and diligence was admissible on the question of negligence in respect to the letter in question.

As a general principle, proof of collateral facts is not admissible, for the reasons that the attention of the jury would otherwise be diverted from the true merits of the controversy, the field of investigation greatly extended, and the expenses of the litigation indefinitely increased; and at the same time subjecting the parties to the necessity of meeting such proof without any previous notice.   1 Greenl. Ev., secs. 52, 448.   There are cases, however, where general evidence, bearing upon the character of parties or witnesses will be received, as in criminal trials, where the respondent is permitted to prove his previous good character; or in prosecutions for a rape, the character for chastity of the prosecutrix.   So in civil cases, where the action involves the general character of a party, or goes directly to affect it; as in the case of a suit by the husband or father for the seduction of a wife or daughter; where evidence may be received impeaching the character of either for chastity.   So, also, for the purpose of impeaching a witness who has been examined.

In these and other cases which might be mentioned, proof of the character of the party, or witnesses, may be shown; but it must be by evidence of his general reputation alone, and not of particular facts; because, although every man is supposed to be prepared to support the one, he can not be presumed to be ready to answer the other without notice.

There is another class of cases, both civil and criminal, where the knowledge or intent of a party, being directly in issue, may be proved by facts which otherwise would be regarded as collateral. Among these is the case of a fraudulent conveyance, where proof of other fraudulent conveyances by the grantor, about the same time, is admissible, to show his interest.   So where the issue is whether goods were obtained by fraudulent pretenses; proof that other goods were obtained about the same time by the vendee, by similar pretenses, is admissible.   Similar proof also is admitted to show the guilty knowledge or intent in the case of an indictment for uttering counterfeit bank notes, or having them in one's possession with intent to utter them.   In these and the like cases, the facts so offered in evidence have a direct bearing upon the question of the knowledge or interest which is in issue, and are received the

same as a verbal declaration of the party, tending to show such knowledge or intent; and their admission is no exception to the general rule.  But the proof of collateral facts seems to be limited to cases where the purpose is to show knowledge, intent, or malice. 4 Stark. Ev. 380; 1 Greenl. Ev., sec. 53 ; *Hollingham* v. *Head*, 4 C. B. (N. S.) 388, decided in 1858.

The case before us does not come within the principle of either class of the cases referred to; and it is well settled, as a general proposition, that proof of negligence in one instance is not admissible to prove it in another; *Matton* v. *Nesbit*, 1 C. & P. 70 ; *Robinson* v. *Railroad*, 7 Gray 92 ; where it was held that evidence of specific acts of negligence and carelessness in an engineer, in running the train on other occasions than the one in question, was clearly incompetent.  Upon the same principle is *Swamscott Machine Co.* v. *Walter*, 22 N. H. 417 ; where the issue was whether the defendant or Wing & Thompson contracted; proof that the plaintiff had previously refused to trust them was held to be collateral and inadmissible.  So in *Hollingham* v. *Head*, 4 C. B. (N. S.) 388 ; where the question was whether a sale of guano was conditional, and not to be paid for unless of a certain quality, it was held that it could not be shown, even on cross-examination of the plaintiff himself, that he had made other sales upon similar conditions.

But it is claimed that the evidence received in this case was to establish a general want of common care and diligence, and not to prove merely another specific act of negligence.  If such proof was admissible at all it should be by evidence of general reputation, as in the cases referred to; otherwise it is open to the objection of multiplying issues, and calling upon the party to meet them, without previous notice; but we are of opinion that the evidence is not admissible in any form.  It is in truth nothing more than the proof of other specific acts of negligence, to render it more probable that negligence existed in respect to the act in question, although in form it is offered to prove general negligence; because, whether the specific acts of negligence are sufficient to prove general negligence or not, is for the jury to determine; and it would be difficult to lay down a rule that would enable the court to say that a single act, complicated as it might be by a variety of circumstances, had no tendency to prove general negligence; and it might safely be asserted that it would rarely happen, in the case of a common carrier by land or by water, a factor, postmaster, or other general depositary, that enough might not be shown, under the idea of proving general negligence, to bring under consideration any and every specific act; inasmuch as, in respect to almost every act resulting in loss or injury, evidence of negligence sufficient to go to the jury, might be adduced.

Were the acts offered in evidence in their nature continuing, such as the careless construction of unsafe places of deposit for letters, the rule would be otherwise ; but here there is no logical connection between the act in question and other similar acts ; and in this respect it stands much like the case put by *Willis*, J., in *Hollingham* v. *Head*, before cited, of an attempt, in an action for an assault, to prove for-

mer assaults by the defendant upon others, for the purpose of showing him to be quarrelsome, and thus render it more probable that he was guilty in the instance in question. In such a case it is clear that such evidence could not be received, even upon an indictment for the assault, unless the respondent had first offered evidence of good character, and then it must be confined to proof of reputation.

It doubtless may be difficult at all times to draw the line between those acts which are continuing in their nature, and those which are not; or those which are and those which are not collateral; but we think that, on a careful examination of the adjudged cases, no principle can be found that will admit the evidence under consideration to bear upon the question of negligence in respect to the letter in question. We are aware of the decision in *Christy* v. *Smith*, 23 Vt. 663; but it will be perceived that the general proof of negligence referred to by the learned judge who gave the opinion, does not embrace evidence of the character now in question. On the trial of that cause the defendant's counsel requested the court to charge the jury that the plaintiff must show some particular act of negligence in relation to the letter in question; but the court instructed the jury that it was enough to show a general want of common care; either in the construction of his places of deposit for letters, so that they were unsafe; or in the management of the post-office, in permitting persons to go behind the railing who had no legal right to go there, and that the letter was lost in consequence of such negligence; and these instructions were sustained by the whole court. There was evidence as to the construction of the letter boxes, and that the defendant, during the period when the loss occurred, allowed persons not sworn to go behind the railing; but there was no evidence of the loss of other letters. This case is not, therefore, an authority that other acts of negligence in relation to other letters might be weighed on the question of negligence in respect to the letter in question, unless such acts were in their nature continuing. Had the evidence in the case before us been received merely to prove that a clerk by whose negligence the letter in question was lost, was an unfit person to be appointed or continued in office, and that his unfitness must have been known to the defendant, who was consequently negligent in superintending the discharge of such clerk's duties, we think no objection could have been made to it; but the instructions do not confine the evidence to that object. On the contrary, it authorizes the jury to weigh the testimony upon the point of negligence in the loss of the letter in question, and to that extent we think the instructions were erroneous. In the general direction of these views are the cases of *Jackson* v. *Smith*, 7 Cow. 717; where it was held that the general character or habit of an usurer is not a foundation for finding usury in a particular loan; 2 C. & H. Phill. Ev. 330, 332; *Holcombe* v. *Hewson*, 2 Camp. 391; 1 Stark. Ev. 17–39; 4 Stark. Ev. 381; *Phelps* v. *Conant*, 30 Vt. 277; *Collins* v. *Dorchester*, 6 Cush. 396; *Hubbard* v. *Concord*, 35 N. H. 52; 1 Greenl. Ev., sec. 52.

Upon these views there must be

*A new trial.*