37 LRA442n

CITY OF DETROIT *v.* LEWIS.

1. TAXATION—TRUSTS AND TRUSTEES—NONRESIDENTS.
    It is competent for the legislature to impose a tax upon credits the legal title to which is vested in trustees, residing within the State, in trust for nonresidents.

2. SAME—CONSTRUCTION OF STATUTE.
    Resident trustees, holding credits for the benefit of nonresidents, are within the terms of section 8, subd. 6, and section 14, subd. 6, of Act No. 206, Pub. Acts 1893, providing, respectively, that, "for the purposes of taxation, personal property shall include all credits of every kind belonging to *inhabitants* of this State," etc., and that "personal property under the control of a trustee or agent, whether a corporation or a

| 109 | 155 |
| 127 | 521 |
| 109 | 155 |
| s66NW | 958 |
| 132 | 1133 |
| 109 | 155 |
| 141 | 589 |
| 109 | 155 |
| 158 | 2552 |

natural person, may be assessed to such trustee or agent in the township where he resides."[1]

3. SAME.

A trustee, against whom a judgment for taxes has been rendered, is entitled to pay it from the trust fund, and to credit himself with the amount so paid.

Error to Wayne; Carpenter, J. Submitted April 10, 1896. Decided April 21, 1896.

*Assumpsit* by the city of Detroit against Alexander Lewis and another to recover the amount of taxes assessed against certain mortgages held by defendants as trustees. From a judgment for plaintiff, defendants bring error. Affirmed.

On the 5th of July, 1892, the Detroit Gaslight Company and Camille Weidenfeld, of the city of New York, executed a contract, the material parts of which are as follows:

" *Whereas,* said second party is desirous of purchasing so much of the property of said first party as is used for the purpose of making and distributing gas, and is also desirous of acquiring all of the capital stock of said first party, and has offered the said first party the price and terms therefor hereinafter named, and the directors of said first party deem it wise, and best for the interests of the stockholders of said first party, that such sale be made; and,

" *Whereas,* in order to consummate such transaction, it will be necessary to obtain the assent of all the stockholders of said first party:

"Now, therefore, said first party agrees that it will, as soon as practicable, present the said proposition to its stockholders, and use reasonable efforts to obtain the authority of all of them to the sale of said property and stock, and, if successful in such efforts, to notify the said second party, within 90 days from the date hereof, of its readiness to carry out the sale aforesaid. And, upon receiving such power

[1] On the question of the place of taxation of trust property, the authorities are collected in a note to *Richmond County Academy* v. *Augusta,* (Ga.) 20 L. R. A. 151.

and authority from its stockholders, said first party agrees to sell, by good and sufficient conveyance, to said second party and his associates, or to such person or corporation as he may designate:  *  *  *  *Provided*, that if such assent, ratification, and authority from such stockholders be not obtained within 90 days from the date hereof, then this agreement becomes void and of no effect, at the option of the party of the second part, to be declared within 30 days after the expiration of said period of 90 days, and he shall have the right to purchase the holdings of the stockholders so assenting, for a *pro rata* proportion of said purchase money, and in any event the party of the second part shall have no cause of action against the party of the first part for its failure to obtain the assent, ratification, and authority of all of said stockholders.

" And, in consideration of the premises, the said second party agrees to purchase the said property and stock, and to pay therefor the sum of $1,450,000, in manner following : $450,000 within nine months after receipt of notice of the authority given by said stockholders as aforesaid, $500,000 on or before one year from the date of such first payment, and $500,000 on or before two years from the date of such first payment; such deferred payments to bear interest at the rate of 6 per cent. per annum, payable semiannually, until paid, and to be secured by a purchase-money mortgage upon the property so transferred, executed by said second party to such persons as said first party shall designate to hold the same as trustees for the stockholders of said first party.   Such mortgage shall contain the usual interest clause contained in the long-form real-estate mortgage in common use in this State.

"Concurrently with the payment by the party of the second part of said first payment of $450,000, and the execution and delivery of said purchase-money mortgage, the said party of the second part shall be entitled to, and shall be put into, the possession of said property and stock; and the board of directors of said party of the first part shall at once hold a meeting of said board of directors, and severally resign as such directors, and, as each resignation shall be accepted, the remaining members of said board shall elect such person to fill the vacancy as shall be named by the party of the second part, and con-

tinue so to do until all of said directors shall be persons designated by said party of the second part.  *   *   *

"All money on hand and accounts due to said first party at the time of the transfer shall be retained by the said first party, and transferred by it to the trustees, for the benefit of its stockholders.

"It is intended and understood that the property of said first party not expressly transferred hereby, and the purchase money aforesaid, shall be, by said first party, prior to the transfer of its capital stock to said second party, transferred to certain persons, to be designated by said first party (presumably, the persons named in said mortgage as trustees), to hold the same for division and distribution among the stockholders of said first party authorizing the sale of such stock; and, wherever the word 'stockholders' is used herein, the stockholders authorizing such sale of stock to said second party are the ones meant, and not such as may be stockholders after such transfer."

This contract, it appears, was carried out, the stock secured, transferred to the new corporation, and on February 1, 1893, Mr. Weidenfeld executed to the defendants and Charles B. Lothrop, all of Detroit, a mortgage for $1,000,000. The description of the property, and the terms of payment, are immaterial. The mortgage was in the usual form, but does not appear to have been accompanied by any note or bond. It specified that the parties of the second part held as trustees and as joint tenants, and not as tenants in common. It does not contain the provisions of the trust. On February 20, 1893, the Detroit Gaslight Company assigned and transferred to said trustees all its rights under the above contract, "particularly the covenants of said Weidenfeld for the payment of the within purchase price; the same being secured by mortgage executed and delivered at the date hereof, but dated February 1, 1893, to the trustees aforesaid." The defendants are the surviving trustees.

In 1894 the assessors of Detroit assessed this mortgage, and two others to the same trustees amounting to $7,500,

to the defendants, as trustees, at their face value; the total amount of the tax being $15,888.52. The defendants appeared before the assessors, and denied their liability, and appealed to the board of review, which decided against them. Upon their refusal to pay, the city instituted this suit, and recovered the full amount of the tax. The case was tried before the court without a jury, upon an agreed state of facts, of which, except as above stated, the material ones are these: There were 11,397 nonresident shares of the stock of the gaslight company, at $50 per share, $569,850; 8,603 resident shares, at $50 per share, $430,150.

The statute under which this tax was assessed is subdivision 6, § 8, Act No. 206, Pub. Acts 1893, which provides that—

"For the purposes of taxation, personal property shall include all credits of every kind belonging to inhabitants of this State, over and above the amounts respectively owed by them, whether such indebtedness is due from individuals or from corporations, public or private, and whether such debtors reside within or without the State."

*Cutcheon, Stellwagen & Fleming,* for appellants.

*John J. Speed,* for appellee.

GRANT, J. (*after stating the facts*). It is important first to determine the exact status of the credit which is the subject of this litigation. At the time this mortgage was given, the stockholders of the Detroit Gaslight Company, resident and nonresident, had assigned all their shares, under the agreement above referred to. Upon the giving of this mortgage they were not the owners, therefore, of any of the stock of that corporation, but had parted with their title to it. All their interests were then represented by this mortgage, which, when collected by the trustees, was evidently to be divided among the *cestuis que trustent,* the former stockholders, in proportion to the amount of stock formerly held by each. There

is no presumption that the interests of either the resident or nonresident parties had been assessed to them at their domiciles in 1894. By their voluntary act the legal title was vested in three citizens of Michigan, as trustees, and remained so vested at the time the assessment was made. Under these facts the principal questions are: (1) Was it competent for the legislature to impose a tax on credits in the hands of resident trustees in trust for nonresidents of the State? and (2) does the act of 1893 impose a tax on credits so held?

The learned counsel for the defendants contend that the legislature has no power to impose such tax, and cite and rely upon the following cases: *State Tax on Foreign-Held Bonds*, 15 Wall. 319; *Graham v. St. Joseph Tp.*, 67 Mich. 655; *Kirtland v. Hotchkiss*, 100 U. S. 491; *City of Davenport v. Mississippi & M. R. Co.*, 12 Iowa, 539; *People v. Eastman*, 25 Cal. 603; *Commissioners of Arapahoe Co. v. Cutter*, 3 Colo. 349.

These authorities, and many others, have established the rule that the *situs* of a credit is the domicile of the owner, and that a credit due from a citizen of this State to a citizen of another State is not subject to taxation at the domicile of the debtor. In none of these cases, however, was the legal title to the credit vested in trustees resident in the domicile of the debtor. So, too, the fact that the credit is secured by a mortgage upon the land of the debtor, or that it is in the hands of an agent for collection merely, does not authorize an assessment against the nonresident creditor. *Goldgart v. People*, 106 Ill. 25; *Grant v. Jones*, 39 Ohio St. 506; *Territory v. Delinquent Tax List*, (Ariz.) 24 Pac. 182; *Commissioners of Arapahoe Co. v. Cutter, supra; Herron v. Keeran*, 59 Ind. 472 (26 Am. Rep. 87).

In *Goldgart v. People*, however, it is said:

"If the owner is absent, but the credits are in fact here, in the hands of an agent, for renewal or collection, with the view of reloaning the money by the agent as a permanent business, they have a *situs* here for the pur-

pose of taxation, and there is jurisdiction over the thing."
See Burroughs, Tax'n, 44.

In *Grant* v. *Jones* it is said:

"Whenever the person holding such choses in action resides in Ohio, he must list for taxation such credits, whether he holds them as owner, guardian, trustee, or agent. If they are held within the State in any such capacity, they are within the jurisdiction of the State for purposes of taxation. If they are not so held, but are owned and held by a nonresident, they are not subject to taxation."

Similar language is also found in *Herron* v. *Keeran*.

We must not be understood to indorse the doctrine of the three cases last cited, in so far as they appear to hold that credits owned by a nonresident, and placed in the hands of an agent for collection and reinvestment, obtain such a *situs* in this State as will subject them to taxation. We are not dealing with such a case, but with one where the absolute legal title is in persons residents of this State. It is clear that these authorities, which are cited by the defendants, recognize a distinction between cases where the legal title is in the nonresident, and where it is in trustees, guardians, or agents at the domicile of the debtor.

The question is little discussed by the text writers. Perry says, "In the absence of a statute, the law would look upon the trustee as the owner, and assess the property at his domicile." 1 Perry, Trusts, § 331.

Lewin says, "Trustees are liable to be rated for the property vested in them." 1 Lewin, Trusts, p. 236.

Cooley says, "In general, personal estate in the hands of a trustee is to be assessed to him at the place of his domicile." Cooley, Tax'n (2d Ed.), p. 375.

"Property in trust is, in the absence of a special provision of statute, taxed at the same place as though the trustee were the absolute owner." 25 Am. & Eng. Enc. Law, p. 153.

Where trustees holding credits secured by mortgages resided in one county of a State, and the *cestuis que trustent* resided in another county, an assessment upon the *cestuis que trustent* at their domicile was held void, and the credits held assessable at the domicile of the trustees. *Latrobe* v. *Mayor, etc.*, 19 Md. 13; *Mayor, etc.*, v. *Stirling*, 29 Md. 48.

A *cestui que trust* residing in Massachusetts was held not taxable there for shares in corporations held in trust for her by trustees residing in another State. *Dorr* v. *City of Boston*, 6 Gray, 131.

Funds in the hands of trustees were held assessable at their domicile, though they belonged to nonresident beneficiaries. *Davis* v. *Macy*, 124 Mass. 193.

Where a judgment was rendered against trustees for maladministration, and they were directed to pay the amount into the hands of a receiver, to be turned over to a new trustee, it was held that the beneficiaries were not liable for taxes. *Smith* v. *Byers*, 43 Ga. 191.

In *Price* v. *Hunter*, 34 Fed. 355, trustees in Pennsylvania were held liable for taxes upon a mortgage upon property in that State held in trust for a nonresident beneficiary. The same doctrine is held in the following cases: *People* v. *Assessors of Albany*, 40 N. Y. 154; *Lewis* v. *Chester Co.*, 60 Pa. St. 325. See, also, *Trustees of Greene Foundation* v. *City of Boston*, 12 Cush. 54; *Greene* v. *Mumford*, 4 R. I. 313; *Catlin* v. *Hull*, 21 Vt. 152.

We are cited to no authorities, nor have I been able to find any, which hold that where the legal title and ownership of personal property, tangible or intangible, is vested in trustees, the beneficiaries or *cestuis que trustent* are taxable, or that the funds in the hands of the trustees are exempt from taxation at their domicile, in the absence of a statute making the property assessable to the *cestuis que trustent*.

It is, however, contended that the terms of the statute,

"all credits of every kind belonging to inhabitants of this State," do not include trustees holding credits for the benefit of nonresidents. It follows from the authorities above cited—and we think the holding based upon sound reason—that the term "inhabitants" includes resident trustees, in whom is vested the absolute legal title to choses in action. Our statute, however, appears to control the question. It provides, "Personal property under the control of a trustee or agent, whether a corporation or a natural person, may be assessed to such trustee or agent in the township where he resides, except as otherwise provided." Act No. 206, § 14, subd. 6, Pub. Acts 1893.

It appears by the stipulated facts that the trustees have commenced foreclosure proceedings, and that one of the defendants in that suit has answered, denying all indebtedness upon the mortgage, and has interposed a cross-bill charging fraud and deception on the part of the Detroit Gaslight Company in the sale of the property, and praying a cancellation of the mortgage. That suit is pending and undetermined. Counsel, in their brief, say:

"If the pending foreclosure suit is decided in favor of the defendants in that case, can it be possible that the law will compel the defendants in this case to pay, not only the large judgment in this case, but also like taxes assessed before the determination of the foreclosure suit, out of their individual property, when they have been remiss in no way?"

That question may arise when the defendant trustees shall be called upon to account for the trust funds, provided the mortgage is declared void. It is not now before us. It is not claimed that they have not in their hands moneys sufficient to pay these taxes. In their appeal from the action of the assessors to the board of review, they set up this pending suit, and state that they have in their hands moneys paid to them as interest on this mortgage; and it is also a fair inference from the record that the $450,000 of the purchase price has been paid to them, and

for which an accounting is asked in that suit. Several of the cases above cited appear to have been brought and decided upon the theory that the trustees, having legal title to the property, were obligated to pay the tax. In *Latrobe* v. *Mayor, etc., supra,* it is said:

" That the taxes assessed upon a trust estate constitute a legal cause of action against the holder of the legal title, we do not doubt; for at law the legal estate, in the hands of a trustee, has the legal incidents and obligations of an absolute title, subject only to the claims in equity of the *cestui que trust.*"

Such suits must, of necessity, be brought against the trustees; and, when judgment is rendered against them, they are entitled to pay the judgment from the trust fund, and credit themselves with the amount so paid. Where a court has adjudged the tax to be valid, it would seem to logically follow that the trustees will be protected in its payment from the trust fund.

The judgment is affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.