# Wytheville.

## COMMONWEALTH v. WILLIAMS' EXECUTOR.

### JUNE 16, 1904.

1. TAXATION—*Choses in Action—Situs—Death of Owner.*—Bonds, stocks
   and other evidences of debt of foreign corporations owned by a
   citizen and resident of this State are subject to taxation in the
   county or corporation of this State in which the owner resides,
   although the evidences of ownership be deposited for safe-keeping
   outside of the State; and, upon the death of the owner, such
   bonds, stocks and evidences of debt are taxable in the county or
   corporation in this State in which the owner resided at the time
   of his death, although his executor does not get actual possession
   of them until after the first day of February in the year for which
   they are assessed.  Bonds, certificates of stock and the like are the
   mere symbols or paper evidence of property, while it is the intan-
   gible, incorporeal right existing in the creditor to demand of his
   debtor performance of the obligation which constitutes property,
   and this follows the person of the owner.

2. TAXATION—*Unadministered Estate—Legacies—Exemption from Tax-
   ation.*—Until an estate is administered it is assessed for taxa-
   tion in the name of the executor, and, although the property of a
   legatee is exempt from taxation, this exemption does not attach
   to a legacy in the hands of an executor before the estate is admin-
   istered and the legacy is paid over.

Error to a judgment of the Circuit Court of Amherst county,
on appeal from the County Court of said county, in a motion
to be released from an alleged erroneous assessment of taxes.

*Reversed.*

The opinion states the case.

*Attorney-General William A. Anderson* and *Otto L. Evans,* for the Commonwealth.

*Daniel & Harper, A. E. Strode,* and *John D. Horsley,* for defendant in error.

Keith, P., delivered the opinion of the court.

Mrs. Williams, a citizen and resident of Amherst county, died in that county on the 29th of October, 1900, and Stephen R. Harding qualified as executor of her will in the County Court of Amherst on the 23rd of November of that year. Mrs. Williams, at the time of her death, owned a large personal property, consisting in the main of stocks and bonds, a part of which were in the vaults of a safe deposit company in the city of New York. Up to the time of her death, all of her property had been assessed for taxation in the State of Virginia, and that it was properly so assessed is not controverted.

On January 19, 1901, Harding was granted ancillary administration upon the will of Mrs. Williams in the State of New York, and before he was permitted to remove the certificates of stock and evidences of debt deposited in the city of New York, he was required to pay a succession tax, amounting to about $19,000. This payment was made about March 20, 1901, and after that time the certificates of stock, bonds and other evidences of indebtedness were delivered to him, and by him brought into the State of Virginia.

The executor named in the will having thus qualified in the courts of this State, and been granted ancillary administration in the courts of the State of New York, in the latter part of January, 1901, filed his bill in the Circuit Court of Amherst county, making all those interested in the estate parties de-

fendant, asking a construction of the will, and submitting all questions arising under it to the determination of the court.

In May, 1902, the executor gave notice that he would on the first day of the May term of the County Court of Amherst county "apply to the said court for relief against the assessment of taxes, county levies, and other local taxes assessed against me on personal property in my hands belonging to the estate of Indiana F. Williams, deceased, for the year beginning February 1, 1901, and so entered in the personal property book of the Courthouse District of Amherst county, the grounds for my application being, among others, that the property so listed as being in my hands was held by me in trust:

"(1) A part, to-wit, $43,250.00 thereof consisted of gas stock in a New York corporation, the same being a specific legacy given Charles N. McCall, of New York city, under the will of Mrs. I. F. Williams.

"(2) The balance of said estate in my hands so listed went under the residuary clause of said will to Sweet Briar Institute, a charitable educational corporation, whose property is exempt from taxation under the laws of the State of Virginia.

"Respectfully,

(Signed)     "S. R. HARDING,
"Ex'or of Indiana F. Williams, dec'd."

The executor by this notice asked for relief from all taxation by the State, the county of Amherst, or any subdivision thereof, and in the County Court all matters raised by the notice were disposed of in one order. The facts proved before the County Court were substantially as we have stated, and that court was of opinion: First, "That the bulk of the property consisted of securities in foreign corporations, the evidences of which were at the time of the assessment deposited in the city of New York and outside of the jurisdiction of the State, not under the con-

trol of the executor, and therefore exempt from taxation here. Secondly, "That at the date of assessment the executor had also qualified as administrator in New York, and there was pending in the Circuit Court of Amherst county a suit in chancery instituted by him, having for its object the administration of the whole estate in his hands, or to come in his hands, under the guidance of the court, and the record shows that the whole estate at the time of assessment was under the control of the court; that while in the beginning the foreign investments were beyond the State jurisdiction, the personal representative by his own act had brought them within the jurisdiction, and therefore, they were proper subjects for assessment by the Examiner of Records under the Act of 1895-6." And, thirdly, "That the whole personal estate being under the control of the court and unadministered as of February 1, 1901, constituted a fund in the suit liable to assessment for taxation, regardless of who became the recipients of the fund under future decrees of the court."

From this judgment of the County Court an appeal was taken to the Circuit Court of Amherst county, and that court being of opinion that "the New York property not in possession of the applicant in Virginia on the first day of February, 1901, was not liable to taxation in Virginia for that year, and that the shares of stock in the Lynchburg Cotton Mill and Improvement Company, and in the National Exchange Bank of Lynchburg, Virginia, had been improperly assessed for taxation against the applicant," reversed the judgment of the County Court and relieved the executor from county and district taxes, amounting to $3,264.21, and from taxes upon the same property due to the State, amounting to $2,007.90. To these judgments a writ of error was awarded by one of the judges of this court.

Mrs. Williams being at the time of her death a citizen of the State of Virginia, resident in the county of Amherst, was she taxable in this State and county upon intangible personal prop-

erty, consisting of bonds and stocks, the evidences of ownership of which were in the vaults of a safe deposit company in the city of New York, and held by it merely as a custodian?

Section 491 of the Code of Virginia provides, that "the commissioner shall ascertain and assess all the personal property not exempt from taxation, and all subjects of taxation in his county, district, or city, on the said first day of February in each year. . . . It shall be his duty to call on every person in his county, etc., to furnish a list of such property, money, credits, or other subject of taxation as required by law, and the value thereof;" and under section 492, as amended by Acts of 1897-98, p. 519, it is provided, among other things, that "if the property be the estate of a deceased person, it shall be listed by the personal representative or person in possession, and taxed to the estate of such deceased person." . . . If the property consists of money, bonds, stock, or other evidences of public or private debts, in any county or city other than that of his residence, or State other than Virginia, it shall be listed by and taxed to the owner thereof." By the Acts of 1897-8, p. 756, it is provided that it shall be the duty of the Examiner of Records annually "to examine all causes pending in the courts of his circuit, and the records thereof, and ascertain and report all money, bonds, notes, stocks, shares of stocks, capital, capital stock, choses in action, other evidences of debt, and all and every other species of personal property and income subject to taxation, under the control of the courts in his circuit, or held by any person, bank, or corporation subject to the order of such courts, or in the hands of or under the control of receivers, commissioners, and fiduciaries appointed by any deed or will."

It was the evident purpose of the Legislature to subject to taxation the subjects enumerated, such as moneys, bonds, stocks, or other evidences of public or private debt wherever the actual situs of the evidences of such money, bonds, stocks, or other

public or private debts might chance to be, if they were owned
by a citizen and resident of Virginia, or in the hands of or
under the control of receivers, commissioners, or fiduciaries
appointed by any deed or will of record in Virginia and under
the jurisdiction of its courts.

It is not questioned that during her lifetime Mrs. Williams
was properly assessed for taxation upon these evidences of debt,
which, for convenience we shall hereafter designate as "the New
York personalty." Let us consider for a moment upon what
that right to tax in Virginia intangible personal property, the
evidences of ownership of which were in the custody of a New
York safe deposit company, rests.

The bonds and certificates of stock were in New York city
for safe-keeping. Of these bonds and stocks there were fifty
shares of stock of the Consolidated Gas Company of New York,
six $1,000 bonds of the Long Island Railway Company, and
six $1,000 bonds of the Union Railway Company of New York
city. The remainder of what we designate as New York person-
alty, amounting to $497,000 in value, were bonds and certifi-
cates of stock in companies incorporated by and having their
legal domicile in States other than that of New York.

In 2 Thompson on Corporations, section 2348, the legal effect
and character of a stock certificate is very clearly stated. He
says: "First, it is to be observed that such a certificate is merely
the paper representative of an incorporeal right, and that it
stands on a similar footing to that of other muniments of title.
It is not in itself property, but it is merely the symbol or paper
evidence of property." The author is here speaking of a cer-
tificate of stock, but the quotation applies with equal force to
bonds or promissory notes of individuals or of incorporated
companies. They are all the mere symbols or paper evidences
of property, while it is the intangible incorporeal right existing
in the creditor to demand of his debtor performance of the
obligation which constitutes property.

Upon this subject Cooley on Taxation (2d Ed.), at page 21, says: "The mere right of a foreign creditor to receive from his debtor within the State the payment of his demand cannot be subjected to taxation within the State. It is a right that is personal to the creditor where he resides, and the residence or place of business of his debtor is immaterial."

Minor on Conflict of Laws, section 123, after stating that tangible personal property is taxable at the place of its actual situs, proceeds to discuss intangible personalty, with respect to which he says more difficulty is experienced in ascertaining the situs where it may be taxed. "The general practice is to treat debts as located, for purposes of taxation, at the creditor's domicile, and there is no doubt that they may have their situs there for that purpose." He gives as an illustration, that shares of stock in a corporation are usually taxable at the domicile of the owner, and not of the corporation, and this it is stated in the note is true, even though a tax has already been paid on the stock in the domicile of the corporation, citing in support of these several propositions numerous authorities.

The adjudged cases are to the same effect. We will cite a few of the more pertinent:

In *Hunter* v. *Board of Supervisors, &c.,* 33 Ia. 376, 11 Am. Rep. 132, where a resident of Iowa had deposited for safe keeping in Illinois promissory notes that had never been brought by him into Iowa, it was held that they were subject to taxation in the latter State. The notes in such case, says the court, are merely the evidence of the debts or rights represented, and these follow the person of the owner; that it seems a different rule might apply, if the notes represented money loaned or invested through an agent in another State. And just here it may be well to repeat that in this case the New York personalty was in New York merely for safe-keeping. It was not there in the hands of an agent charged with any duty or clothed with any power or authority with respect to it, except as custodian. Those

cases, therefore, such as *Catlin* v. *Hull,* 21 Vt. 152, where notes
were left by a resident of the State of New York in the State
of Vermont, in the hands of an agent, for management, collec-
tion, and investment, in which it was held that the property
was within the State of Vermont for the purposes of taxation,
have no application here. As was said, in *Hunter* v. *Board of
Supervisors, supra,* "We may concede that money and credits
under the control or management of an agent in another State,
belonging to a resident in this State, with a view to be invested,
loaned or used for pecuniary profit by such agent, would not be
the subject of taxation in this State."

In the case reported in 15 Wallace, 300, 21 L. Ed. 179, as
the *"State Tax on Foreign-held Bonds,"* Mr. Justice Field,
delivering the unanimous judgment of the Supreme Court of the
United States, says:

"The power of taxation, however vast in its character and
searching in its extent, is necessarily limited to subjects within
the jurisdiction of the State. These subjects are persons, prop-
erty, and business. Whatever form taxation may assume,
whether as duties, imposts, excises, or licenses, it must relate to
one of these subjects. It is not possible to conceive of any
other, though as applied to them, the taxation may be exercised
in a great variety of ways. It may touch property in every
shape, in its natural condition, in its manufactured form, and
in its various transmutations. And the amount of the taxation
may be determined by the value of the property, or its use, or
its capacity, or its productiveness. It may touch business in the
almost infinite forms in which it is conducted, in professions,
in commerce, in manufacture, and in transportation. Unless
restrained by provisions of the Federal Constitution, the power
of the State as to the mode, form, and extent of taxation is
unlimited, where the subjects to which it applies are within
her jurisdiction.

"Corporations may be taxed, like natural persons, upon their

property and business. But debts owing by corporations, like debts owing by individuals, are not property of debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors, is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations in numerous adjudications, but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement."

Many cases are reviewed in this opinion, and the conclusions of the court are thus summed up in the syllabus: "Bonds issued by a railroad company are property in the hands of the holders, and when held by non-residents of the State in which the company was incorporated, they are property beyond the jurisdiction of that State. A law of Pennsylvania, passed on the 1st of May, 1868, which requires the treasurer of the company incorporated and doing business in that State to retain five *per cent.* of the interest due on bonds of the company, made and payable out of the State to non-residents of the State, citizens of other States, and held by them, is not, therefore, a legitimate exercise of the taxing power of the State. It is a law which interferes between the company and the bondholder, and, under the pretense of levying a tax, impairs the obligation of the contract between parties." See *Commonwealth* v. *C. & O. R. R. Co.,* 27 Gratt. 344.

These authorities are sufficient to establish the right of the State to assess for taxation, against Mrs. Williams, during her lifetime, the New York personalty, although the evidences of her right to that property were not in her actual possession in

Amherst county, because the incorporeal right was in her, and she was in the county of Amherst, though the symbols or paper evidences of the property were in the State of New York.

But it is said that her death changed all this. The property, real and personal, which had belonged to her during her life-time, continued to be the subject of taxation after her death. It passed under her will, and, therefore, it comes within the terms of the statute. To the moment of the death of Mrs. Williams, it was, as we have seen, properly taxable in Amherst county. By her will, title to all her personalty passed to her executor. He was not in possession on the 1st of February, 1901, of the paper evidences of this New York personalty, nor was his testatrix in such possession at the moment of her death. That fact did not exempt it from taxation in this State during her lifetime, why should it operate to shield it from taxation after her death, when by her will the title to this property passed to the executor? It may be conceded that an executor has no extra-territorial power; that an executor appointed by and who qualifies under a will proved in Virginia has no right to sue in the courts of New York, but that the will must be admitted to probate, and letters of administration be granted by the courts of that State. But that does not militate against the proposition that the title to all personal property of decedent passed to her executor, and payment to him and an acquittance given by him would have been a complete discharge and satisfaction of any obligation due to the estate which he represented. The State of New York might rightfully hold any personal prop-erty, tangible or intangible, within its borders, or any evidences of debt, subject to the satisfaction of any claims for taxes upon its part, or the demands of its citizens, but those claims and demands being satisfied, the estate of the decedent is to be delivered to the executor appointed by the State of the decedent's domicile at the time of her death, there to be administered. In this case there were no debts due in the State of New York, and

it is earnestly contended by counsel for appellant that the trans-
fer or succession tax which was assessed upon the New York
personalty was not lawful, and that its collection could have
been successfully resisted by the executor.   But with that we
have no concern.   The sole question before us is, was the prop-
erty rightfully assessed with taxes by the State of Virginia
and the county of Amherst?

Speaking of the place at which personal property belonging
to decedent estates is taxable, *Cooley on Taxation* (2nd Ed.),
at p. 376, says: "To determine where the personal property
belonging to the estates of decedent shall be taxed, it is neces-
sary to consult statutes.   It is sometimes taxable to the estate
as such at the place of situs, if the deceased was a non-resident,
or at his last place of domicile if a resident; but sometimes also
to the personal representative in his character as such, and at his
place of domicile.   And it will continue to be taxable to the
estate or to the representative until actually distributed, but
not afterwards."

*Desty on Taxation,* Vol. I., at page 333, says:

"The personal estate of a testator accompanies him wherever
he may reside and become domiciled, so that he acquires the
right of disposing of and dealing with it according to the law
of his domicile.   Personal property of deceased is not taxable
after the appointment of the executor, and before distribution,
when the property is not within the Commonwealth, and neither
the executor nor any person having an interest is a resident of
the State."   And further on the same author says: "The pos-
session and control over property of an estate by an executor
are those of the owner for purposes of assessment and taxation.
The legal title to personal property, consisting of money, stocks,
and bonds of testator, is in the executor for purposes of admin-
istration."

It will be observed that this author states the law to be that

the property of deceased is not taxable after the appointment
of the executor and before distribution, when it is not within
the Commonwealth, and neither the executor nor any person
having interest in it is a resident of the State. The authority
cited for this proposition is *Dallinger* v. *Rapello,* 14 Fed. Rep.
33, in which the opinion was delivered on the circuit by Mr.
Justice Day of the Supreme Court, and the syllabus of the
case is sufficient to explain what was there decided. "Personal
property of a deceased inhabitant of Massachusetts is not tax-
able under general statute, chapter 12, section 20, after the ap-
pointment of an executor and before distribution, when the
property is not within the Commonwealth, and neither the ex-
ecutor nor any person having an interest in or right to receive
the property has a domicile or residence there." This is a prop-
osition which does not admit of question, and the converse of
which is authority in support of the right to tax in this case.

In *Mayor and Aldermen of Gallatin* v. *Alexander, Executor
of S. Wallace,* 10 Lea (Tenn.) 475, it appears that Wallace died
in Sumner county, Tenn., leaving a will by which he gave his
personal estate to his nephews and nieces, some of whom were
non-resident of the State, and none of whom resided in the town
of Gallatin; that Alexander, a resident of the town of Gallatin,
was appointed executor of Wallace; that on his qualification
he took charge of the personal estate, which consisted, among
other things, of notes of individuals and of various foreign
corporations, and bonds of several counties of the State of Ken-
tucky. The court held that the legal title to this property was
in the executor, and that its situs for the purpose of taxation
was at the residence or domicile of the executor. *Bonapart* v.
*Baltimore,* 104 U. S. 592, 26 L. Ed. 845.

In Burroughs on Taxation, at page 224, it is said: "The
personal property of decedents is taxed at the domicile of the
decedent to the person having legal title, and not in the name
of the deceased person. During the settlement of the estate it

must have a situs somewhere, and none so appropriate as where the decedent lived."

We are of opinion that the New York personalty, for convenience so-called, was properly assessed for taxation to the executor of the will of Mrs. Indiana F. Williams, and in support of that conclusion refer to the following authorities in addition to those already cited:

*Horne* v. *Green,* 52 Miss. 452; *Foresman* v. *Byrns,* 68 Ind. 247; *Frothingham* v. *Shaw,* 175 Mass. 59, 55 N. E. 623, 78 Am. St. 475; *Goldgart* v. *The People,* 106 Ill. 25; *Boyd* v. *Selma,* 96 Ala. 144, 154, 11 South. 393; *Cameron* v. *Burlington,* 56 Ia. 320, 9 N. W. 239; *Baldwin* v. *Shine,* 84 Ky. 502, 2 S. W. 164.

We are of opinion that there is error in so much of the judgment of the Circuit Court as relieves the executor from State and county taxation upon the New York personalty.

With respect to the stock in the National Exchange Bank of Lynchburg and the Lynchburg Cotton Mill and Improvement Company, we concur with the Circuit Court, and its judgment is, with respect to those items, affirmed.

The exemption from taxation claimed by the executor upon the ground that the property sought to be taxed belongs to the Sweet Briar Institute, a charitable institution, is without merit. Until the estate is administered, it is assessed for taxation in the name of the executor. Until the estate was administered and the legacy paid to the Sweet Briar Institute in due course of administration, it could not be known that it would receive anything under this bequest. *McGregor* v. *Vanpel,* 24 Ia. 436. With respect to this contention, we merely decide that appellee was not entitled to the exemption as of the first day of February, 1901. Beyond that we intend to express no opinion.

For these reasons the judgment of the Circuit Court must be reversed, and this court will enter such judgment as the Circuit Court should have rendered.

*Reversed.*