McKennon v. McFall.

A. O. McKENNON et al., Exrs., v. F. S. McFALL, County Trustee, et al.*

|(*Nashville.*   December Term, 1912.)

1. **TAXATION.** Situs of intangible personalty is not always taxable where decedent resided at his death.

The maxim that the *situs* of movables follows the person of the owner, for the purpose of taxation, may not embrace, in every aspect, the intangible property of a decedent, regardless of its actual or fixable *situs*, within the general assessment law (Acts 1907, ch. 602, sec. 5, subsec. 2, and sec. 8, subsec. 10), providing for the assessment of personalty. (*Post, pp.* 400-403.)

Acts cited and construed: Acts 1907, ch. 602, sec. 5, subsec. 2. and sec. 8, subsec. 10.

Cases cited and approved: Mayor v. Alexander, 10 Lea, 477; Cannon v. Apperson, 14 Lea, 588; Street Railway v. Morrow, 87 Tenn., 428; Grundy Co. v. Coal Co., 94 Tenn., 295.

2. **SAME.** Situs of decedent's intangible personalty may be fixed for taxation here, though physically outside the State.

It is within the power of the legislature to apply, in its full force, the fiction of the maxim that the *situs* of personalty follows the person of the owner, so as to fix within the State, for taxation purposes, the *situs* of all the intangible personalty of a resident decedent, though located physically outside the State. (*Post, pp.* 404.)

---

*The question of local *situs* within the State of tangible personal property of nonresident for the purposes of local taxation is treated in a note in 7 L. R. A. (N. S.), 704.

As to whether personal property having a *situs* for taxation elsewhere is subject of taxation in the State of the owner's domicile, see note in 36 L. R. A. (N. S.), 295.

As to *situs* for taxation of debts evidenced by notes and mortgages, see note in 16 L. R. A., 729.

On the question when debt may have *situs* for the purpose of taxation apart from domicile of creditor, see notes in 2 L. R. A. (N. S.), 637, and 14 L. R. A. (N. S.), 493.

McKennon v. McFall.

Case cited and approved: Express Co. v. Patterson, 122 Tenn., 291.

**3. SAME. Intangible personalty of a resident decedent, physically located and taxable in another State, is not taxable here; word "held" does not mean "owned," but "controlled for taxation purposes."**

Under the assessment law (Acts 1907, ch. 602, sec. 5, subsec. 2), providing for the assessment of property held by executors and administrators in the county where the decedent resided when he died; but if he lived in another State, then where the personal representative resides; and under section 8, subsection 10, of said act classifying personalty for taxation, the power to tax in this State is withheld as to such intangible personalty of a decedent as is held outside the State's territory, and subject to taxation in the other State where located; for the word "held" in the said first statutory provision does not mean "owned," but means "held or controlled for taxation purposes." (*Post, pp.* 403, 404.)

Acts cited and construed: Acts 1907, ch. 602, sec. 5, subsec. 2, and sec. 8, subsec. 10.

**4. SAME. Resident decedent's stock in a bank in another State, and taxable there, is not taxable here.**

Under the statutory provisions stated in the preceding headnote, shares of stock in a Mississippi banking corporation, held by the decedent who resided in Tennessee at the time of his death, are not taxable here against his estate, because they are subject to taxation in Mississippi. Our own statute (section 24 of said assessment law) provides for the assessment of shares of a nonresident stockholder in banks incorporated and doing business in this State. (*Post, pp.* 404, 405.)

Acts cited and construed: Acts 1907, ch. 602, sec. 5, subsec. 2; sec. 8, subsec. 10; and sec. 24.

**5. SAME. In injunction suit by executors to enjoin collection of tax judgment, burden rests on them to show invalidity of tax.**

Where executors file a bill to enjoin the collection of a judgment for taxes, rendered by the county trustee, the burden of proof

McKennon v. McFall.

rests upon them to show some fact upon which the tax assess‑ment is claimed to be invalid.  (*Post, pp.* 397, 405.)

6. **SAME.  Taxable situs of notes is that of the creditor, or his agent holding them for investment, etc.**

The taxable *situs* of notes is at the domicile of the creditor, and not at that of the debtor, where they reside in different States, or at the residence of an agent of the creditor, when in his hands for investment and reinvestment, or other localized busi‑ness purposes. ( (*Post, pp.* 405, 406.)

Cases cited and approved:  Detroit v. Lewis, 109 Mich., 155; Herron v. Keeran, 59 Ind., 472; Buck v. Miller, 147 Ind., 586; Walker v. Jack, 88 Fed., 576, 31 C. C. A., 462; Monongahela, etc., Co. v. Board, 115 La., 564; Commonwealth v. Dun, 126 Ky., 108; New Orleans v. Stempel, 175 U. S., 309.

7. **SAME.  Taxable situs of bank deposits is that of the depositor, and not that of the bank.**

A deposit in a bank in another State is a mere debt due from the bank to the depositor, and, after his death, is taxable here, and not in such other State.  (*Post, pp.* 397, 406.)

Cases cited and approved:  Grissom v. Bank, 87 Tenn., 350; Akin v. Jones, 93 Tenn., 353; Grundy Co. v. Coal Co., 94 Tenn., 295; Buck v. Miller, 147 Ind., 472.

8. **SAME.  Taxable situs of intangible personalty is not affected by laws of other States.**

The power of this State to tax intangible personalty belonging to the estate of a resident decedent is not affected by the tax laws of another State where the subject of taxation may be phy‑sically located.  (*Post, pp.* 406-410.)

Acts cited and construed:  Acts 1907, ch. 602.

Cases cited and approved:  Gallatin v. Alexander, 10 Lea, 475; Bonaparte v. Tax Court, 104 U. S., 592; Coe v. Errol, 116 U. S., 517; Judy v. Beckwith, 137 Iowa, 24; Kelly v. Rhoads, 7 Wyo., 237; Millsons v. Jackson, 78 Miss., 537· Commonwealth v. Wil‑liams, 102 Va., 778, citing and reviewing cases.

9. **SAME.** Taxable situs of bank deposit cannot be so diverted by executors as to avoid taxation.

Tennessee executors cannot divert the taxable *situs* of a bank deposit of the testator from the domiciliary administration into another jurisdiction by transferring it from a bank in one State or country to a bank in another, so as to avoid taxation in this State. (*Post, pp.* 397, 410, 411.)

**Cases** cited and approved: Railroad v. Herb, 125 Tenn., 408; McCabe v. Lewis, 78 Mo., 296; Embry v. Miller, 1 A. K. Marsh (Ky.), 302; Sedgwick v. Ashburner, 1 Bradf. Sur. (N. Y.), 105; Schley's Estate, 11 Phila. (Pa.), 129, Id., 2 Wkly. Notes Cas. (Pa.), 684; Probate Court v. Matthews, 6 Vt., 269; Peck v. Mead, 2 Wend. (N. Y.), 470; Hoes v. Railroad, 173 N. Y., 435.

10. **SAME.** Chancery court's disallowance of tax penalties allowed by county trustee in back assessment proceedings is erroneous.

In taxpayer's injunction suit to enjoin the collection of the county trustee's judgment in a back assessment proceeding assessing, for taxation, intangible personalty physically located in another State, but belonging to a deceased resident of this State, the chancery court's disallowance of the statutory tax penalties allowed by the county trustee in the back assessment proceedings, is erroneous, and will be corrected by the supreme court. (*Post, p.* 411.)

**Acts** cited and construed: Acts 1907, ch. 602, sec. 30.

---

FROM MAURY.

---

Appeal from the Chancery Court of Maury County. —W. S. BEARDEN, Chancellor.

JAMES A. SMISER and THOS. H. PEEBLES, for complainants.

ATTORNEY-GENERAL CATES, W. J. TOWLER, and FLEMING & FLEMING, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This suit was commenced in the chancery court of Maury county by a bill of the executors of the estate of J. M. Sargent, deceased, to enjoin the collection of a judgment rendered against them by the trustee of the county in both assessment proceedings begun before that official by one of the revenue agents of the State; the trustee having held taxable property of the testator which had been by the executors omitted from assessment returns for the years 1908 and 1909.

The chancellor granted partial relief to the complainant executors, holding that what may, for convenience, be denominated as the "Mississippi assets" of the testator were not taxable in Tennessee, but that what may be likewise termed the "Canadian assets" were taxable for both of said years.

Both the complainant executors and the defendants have appealed and assigned errors.

The cause stands for trial upon an agreed state of facts, which may be summarized as follows:

(1) That testator died in Maury county, on April 8, 1907, there domiciled; but for many years prior to his removal to that county on January 17, 1907, he had been a citizen of and domiciled in the State of Mississippi. Therefore, no question is made as to the taxability of his property for the year 1907; he not being domiciled in Tennessee on the test tax date of that year, January 10th.

(2) In May, 1907, the will was offered for probate in Maury county, but was, by reason of a contest made on issue of *devisavit vel non,* not probated until July, 1908, when said will was there probated; and complainants qualified as executors thereof, and took over all the assets ever physically located in Tennessee, consisting of about $14,000 in the Phoenix National Bank, in Maury county. The Tennessee administration of the estate is yet pending.

(3) In 1907 John H. Phalen, a resident citizen of Mississippi, was appointed temporary administrator of "the Mississippi estate," consisting of notes, stock ($1,800) in a Mississippi bank, and deposits in banks located in that State, in all about $44,000, all of which assets had also, prior to the death of testator, been in the hands of Phalen, who then held same as agent of the decedent, Sargent, under a written power of attorney; none of same ever having been physically in the State of Tennessee.

(4) In August, 1908, the complainant executors filed the will for probate in a court in Mississippi, and there qualified as executors of said will, taking over as such, and under orders of that court, from Phalen, the assets he had taken over as temporary administrator, and the executors have there paid out funds in debts, costs, and to legatees in the sum of $27,000.

(5) *Canandian assets.* At his death testator was the owner of $16,415.21 on deposit in a bank of Montreal, Canada; and, in order to meet the grounds of refusal of the bank to permit a withdrawal of the deposit by

them in virtue of their appointment as executors in Tennessee, or in Mississippi, the executors arranged for a withdrawel under an indemnity bond, under which the funds were transmitted to the National City Bank, of New York City, in February, 1910. The Phoenix National Bank, of Columbia, Maury county, assisted in making this arrangement; and by an arrangement between these two banks and the executors a special account was opened by the latter in their names as executors in the Columbia bank, against which they checked, the checks being sent to and approved by the New York bank, which held the funds to the credit of the Columbia bank. Before Canadian authorities would permit the deposits to be withdrawn from the Dominion, they required payment to be made of the local inheritance or succession tax, which was paid out of "Mississippi assets." After deposit of the "Canadian funds" in New York City, the executors on March 20, 1909, entered same on their inventories returned in Mississippi, "where under the law of said State they became liable for the same in their capacity as executors under the statutes of Mississippi," where they have been in large part disbursed by vouchers approved by the Mississippi court.

(5) All of said funds, except the "Canadian funds," have been duly assessed for taxation in Mississippi for the years 1908 and 1909, and there paid by the executors.

(6) "Under the laws of the State of Mississippi these executors are not allowed to bring funds in Mississippi

out of said State for any purpose, but said laws require the administration of said estate to be made in said State, under and by the laws of said State."

(7) The assessment by the trustee of Maury county, and adjudication based thereon, was of all funds, plus statutory penalties and costs.

It thus appears that we have excluded from consideration any taxes for 1907; and, therefore, of all questions that might be incident to the domicile of J. M. Sargent, deceased, being in Tennessee at the date of his death, April 8, 1907.

The contentions made by the parties, respectively, concern the estate or estates administered under the will by the executors, and thus involve the construction and application of our tax statute in relation to the property of a decedent who leaves property in this and in another State.

The General Assessment Act (Acts 1907, ch. 602) provides as follows:

"Sec. 5. The basis of all assessments shall be as follows: . . . .

"(2) To assess the property held by executors and administrators in the county . . . in which the decedent resided at the time of his death until such shall have been distributed; but if the deceased lived in another State, then the property shall be assessed where the personal representative resides."

"Sec. 8. All personal property of every kind shall be assessed under the following classification: . . .

"Class 6. All bonds, except United States bonds, and all shares of stock. · . · .

"Class 7. Notes, duebills, *choses* in action, accounts, mortgages, or any other evidences of indebtedness, and money in hand or on deposit or invested in any manner in this State or elsewhere not otherwise assessed.

"Class 8a. The fact that any personal property may be deposited, incumbered, or transferred or pledged as collateral or loaned or out of the possession of the owner, whether the same be in or out of this State, shall not in any wise excuse the same from being listed and reported for taxation."

"Sec. 16. Persons acting as executors . . . shall make a return of the property, money, credits and effects held or controlled by them in said capacity, separate from their individual returns, and same shall be listed for taxation."

*Mississippi Assets.* In respect of what have been termed "Mississippi assets," the defendants' insistence, under assignment of error, is that the chancellor erred in holding these to be nontaxable in this State; that the *situs* of his estate for taxation was fixed at date of the testator's death in Tennessee, his domicile, which *situs* could only be changed by his removal from the State before death; that Acts 1907, ch. 602, sec. 8, class 8a, quoted above, provides that his property "out of this State" is subject to be taxed here; that this class 8a has relation to property of decedents; and that in any event the *situs* of the intangible property of decedent physically in Mississippi is in Maury county.

The contention of complainants executors, in rebuttal, is that class 8a refers only to property of one living; that sections 5 (2) and 16 are the only ones applicable to a decedent's property, and that these sections provide for the assessment of only such property as is "held," or "held or controlled," by an executor; that in the present case the Mississippi assets were, according to the stipulation as to facts, in the holding and control of the executors of the will under their appointment i : Missippi, to be as fully recognized as if distinct individuals had qualified as executors in that jurisdiction; that, therefore, the assets there are not subject to taxation in this State, and that our assessment laws do not mean to subject them.

As has been noted, the parties in their stipulation (6) have agreed that the laws of Mississippi require the property of the estate therein to be administered there under the laws of that State—whether by way of foundation ancillary or primary in character does not appear.

We conceive that this stipulation has the effect of showing that any property "held" in Mississippi by complainants must be, for administration purposes, held there, under and by virtue of the laws of that State, and not that the property so held or controlled would not in any sense be controlled by them by virtue of their appointment and qualification in Tennessee, for taxation purposes, within the meaning of the Assessment Act. That act was evidently drafted on that theory of taxation which, in respect of a living owner, treats (sec-

McKennon v. McFall.

tion 8, cl. 10) his intangible effects as taxable at his domicile, notwithstanding they may be out of the State, under the maxim that movables follow the person. *Mayor* v. *Alexander,* 10 Lea, 477; *Cannon* v. *Apperson,* 14 Lea, 588; *Grundy County* v. *Coal Co.,* 94 Tenn., 295, 317, 29 S. W., 116.

In exacting from such an owner the contribution of taxes, the legislature does not stop to make inquiry whether the evidences of indebtedness that he owns are located in this State, or where his intangible property may be situated physically.

But, in respect of the property of a decedent, the fiction of law, embodied in the maxim above referred to, under the theory underlying the statute, may not under our construction of the act extend so as to embrace, in every aspect, the intangible property of the decedent, regardless of its actual or fixable *situs.* "The fiction that personal property has no *situs* but that of the owner will always yield whenever the actual fact is opposed to the fiction, and when the purposes of justice likewise demand that the actual *situs* shall be examined." *Street Railway* v. *Morrow,* 87 Tenn., 428, 11 S. W., 353. When a decedent leaves, under a will, property in this and another State, the fiction appears to be yieldable to an extent, in that it is only property "held or controlled" for taxation purposes that the executor is to return for taxation in the county where decedent resided, and not property *owned.* This should exclude property not controlled here for taxation, by a Tennessee executor, and legally subject to have fixed to it *situs* for taxation in,

and by virtue of the law of, another State; this, since our act, in its converse phase, provides for the taxation of property of decedents living in *another State,* at the place *where the personal representative resides* (section 5 [2]), and we deem it unfair to impute to the legislature a motive to take where and what it does not reciprocally yield.

It was within the power of the legislature to have applied the fiction of the maxim in full force, and so as to have fixed for taxaton the *situs* here of all the intan-gible property of the decedent, located physically out-side the State. *Express Co.* v. *Patterson,* 122 Tenn., 291, 123 S. W., 353, and cases cited.

To what extent has it seen fit to restrict the appli-cation of the same? We believe that the fair construc-tion of the act is that the power to tax is withheld as to such intangible property of a decedent as is held out-side of the State's territory, and, being in the other sovereign's jurisdiction, is there within the power of its legislature to validly assign to it a local *situs* for taxation purposes.

When we look to the nature of the so-called "Missis-sippi assets," they are found to consist: (1) Of shares of bank stock in Mississippi banking corporations; (2) notes, against whom as makers, and residences of mak-ers, the stipulation does not disclose, and (3) deposits in Mississippi banks.

As respects the first, the shares of bank stock, the law is well settled that it was competent for the taxing power of Mississippi to fix a taxing *situs* therefor at

the corporation's domisile in that State. *Street Railway* v. *Morrow,* supra; *First National Bank* v. *Smith,* 65 Ill., 44, 53; *Wiley* v. *Commissioners,* 111 N. C., 397 16 S. E., 542. Our own statute provides for the assessment of shares of a nonresident stockholder in banks incorporated and doing business in this State. General Assessment Act, sec. 24.

As to the notes: If we were to assume in favor of the complainants, upon whom rests the burden of proof, what is not shown—that the makers of the notes were residents of Mississippi—then the great weight of authority is to the effect that these notes have taxable *situs* at the domicile of the creditor decedent, and not at the domicile of the debtor; and indeed that it was not within the taxing power of Mississippi to give these notes, merely because they were evidences of indebtedness reduced to concrete form, taxable *situs* in that State, nothing else appearing. Wharton on Conflict of Laws, sec. 80c; *Detroit* v. *Lewis,* 109 Mich., 155, 66 N. W., 958, 32 L. R. A., 439; *Herron* v. *Keeran,* 59 Ind., 472, 26 Am. Rep., 87; *Buck* v. *Miller,* 147 Ind., 586, 45 N. E., 647, 47 N. E., 8, 37 L. R. A., 384, 62 Am. St. Rep., 436, 458.

A condition that, it seems, would render them taxable outside the domicile of the nonresident creditor, would be their reduction to concrete form and a holding within the limits of the taxing State in the hands of an agent for purposes of investment or reinvestment, or for use in a business conducted within that State—a localization of a business in which the credits were used. *Walker* v. *Jack,* 88 Fed., 576, 31 C. C. A., 462; *New*

*Orleans* v. *Stempel,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed., 174, and annotations; *Monongahela, etc., Co.* v. *Board,* 115 La., 564, 39 South., 601, 2 L. R. A. (N. S.), 537, 112 Am. St. Rep., 275; *Com.* v. *Dun,* 126 Ky., 108, 102 S. W., 859, 10 L. R. A. (N. S.), 920.

The same rules govern the bank deposit, which was a mere debt from the bank to the decedent, domiciled in Tennessee. *Grundy County* v. *Coal Co.,* supra; *Grissom* v. *Bank,* 87 Tenn., 350, 10 S. W., 774, 3 L. R. A., 273, 10 Am. St. Rep., 669; *Akin* v. *Jones,* 93 Tenn., 353, 27 S. W., 669, 25 L. R. A., 523, 42 Am. St. Rep., 921, and cases cited. And, therefore, the *situs* for taxation is necessarily in Tennessee. *Buck* v. *Miller,* supra.

The stipulation does not disclose the power or duties of decedent's agent, Phalen—certainly it falls short of showing a localization of a business, in respect of investments, reinvestments, checking on bank deposits, etc.

The contention of the executors is that the death of J. M. Sargent worked a change in the taxability of his property so radical as that all kinds of his property in Mississippi, in his life here taxable to him, became on his death nontaxable here under the act. The theory at the base of this insistence is that the executors, who qualified in Mississippi there *held* and *controlled* said assets. They may, in one sense—for administrative and distributing purposes—have so held, and yet for *taxation purposes* not controlled the same asset. At any rate, we are concerned here with the construction of our act. It may be that, under the laws of Mississippi, the holding for purposes of administration may have

McKennon v. McFall.

been made to support or be a holding for taxation pur·
poses, with consequent power to levy on all the prop-
erty referred to. The tax laws of that State are not in
evidence. If that be the case, whether rightfully or
wrongfully so, the taxing power of this State is not
thereby precluded of exercise in respect of such prop-
erty as may be deemed not to be excluded by Acts 1907,
ch. 602. *Coe* v. *Errol,* 116 U. S., 517, 6 Sup. Ct., 475, 29
L. Ed., 715; *Judy* v. *Beckwith,* 137 Iowa, 24, 114 N. W.,
565, 15 L. R. A. (N. S.), 142, 15 Ann. Cas., 890; *Kelly*
v. *Rhoads,* 7 Wyo., 237, 51 Pac., 593, 39 L. R. A., 594, 75
Am. St. Rep., 904; 37 Cyc., 755, 801. In short, we have
for determination what our act excludes, not what any
tax law of Mississippi may include. It seems that the
Mississippi court rules in accord with the principles
here announced. *Millsaps* v. *Jackson,* 78 Miss., 537, 30
South., 756.

A case arose in Virginia on facts similar to those in
this case. There Mrs. Williams, a citizen and resident
of Virginia, died there testate, leaving a large estate;
a part of it being intangible personalty kept in a bank
vault in New York City. One Harding first qualified as
executor in Virginia, and later was granted ancillary
administration under the will in New York. The exe-
cutor brought into contest the validity of a levy made by
the Virginia tax authorities, in respect of the property
in New York, making the questions here involved and
the additional point that the legatee of that property
resided in New York. The supreme court of appeals of
Virginia, after demonstrating that the testator was tax-

able on that property in Virginia while in life, proceeded to say:

"But it is said that her death changed all this. The property, real and personal, which had belonged to her during her lifetime, continued to be the subject of taxation after her death. It passed under her will, and therefore it comes within the terms of the statute. To the moment of the death of Mrs. Williams, it was, as we have seen, properly taxable in Amherst county. By her will, title to all her personalty passed to her executor. He was not in possession on the 1st of February, 1901, of the paper evidences of this New York personalty, nor was his testatrix in such possession at the moment of her death. That fact did not exempt it from taxation in this State during her lifetime. Why should it operate to shield it from taxation after her death, when by her will the title to this property passed to the executor? It may be conceded that an executor has no extraterritorial power; that an executor appointed by and who qualifies under a will proved in Virginia has no right to sue in the courts of New York; but that the will must be admitted to probate, and letters of administration be granted by the courts of that State. . . .

"The State of New York might rightfully hold any personal property, tangible or intangible, within its borders or any evidences of debt, subject to the satisfaction of any claims for taxes upon its part, or the demands of its citizens; but, those claims and demands being satisfied, the estate of the decedent is to be delivered to the executor appointed by the State of the de-

McKennon v. McFall.

cedent's domicile at the time of her death, there to be administered.   In this case there was no debt due in the State of New York, and it is earnestly contended by counsel for appellant that the transfer or succession tax which was assessed upon the New York personalty was not lawful, and that its collection could have been successfully resisted by the executor.   But with that we have no concern.   The sole question before us is: Was the property rightfully assessed with taxes by the State of Virginia and the county of Amherst?   .   .   .

"In *Gallatin* v. *Alexander,* 10 Lea, 475, it appears that Wallace died in Sumner county, Tenn., leaving a will by which he gave his personal estate to his nephews and nieces, some of whom were nonresident of the State, and none of whom resided in the town of Gallatin; that Alexander, a resident of the town of Gallatin, was appointed executor of Wallace; that on his qualification he took charge of the personal estate, which consisted, among other things, of notes of individuals and of various foreign corporations, and bonds of several counties of the State of Kentucky.

"The court held that the legal title to this property was in the executor, and that its *situs* for the purpose of taxation was at the residence or domicile of the executor.   *Bonaparte* v. *Tax. Ct.,* 104 U. S., 592, 26 L. Ed. 845.

"In Burroughs on Taxation, at page 224, it is said: 'The personal property of decedents is taxed at the domicile of the decedent to the person having legal title, and not in the name of the deceased person.   During the

settlement of the estate it must have a *situs* somewhere, and none so appropriate as where the decedent lived.'

"We are of opinion that the New York personalty, for convenience so called, was properly assessed for taxation to the executor of the will of Mrs. Indiana F. Williams, and in support of that conclusion refer to the following authorities, in addition to those already cited: *Horne* v. *Green,* 52 Miss., 452; *Foresman* v. *Byrns,* 68 Ind., 247, *Frothingham* v. *Shaw,* 175 Mass., 59, 55 N. E., 623, 78 Am. St. Rep., 475; *Goldgart* v. *People,* 106 Ill., 25; *Boyd* v. *Selma,* 96 Ala., 144, 154, 11 South., 393 [16 L. R. A., 729]; *Cameron* v. *Burlington,* 56 Iowa, 320, 9 N. W., 239; *Baldwin* v. *Shine,* 84 Ky., 502, 2 S. W., 164." *Com.* v. *Williams,* 102 Va., 778, 47 S. E., 867, 1 Ann. Cas., 434.

It may be noted that since the decision in *Gallatin* v. *Alexander,* in 1882, our tax laws have been changed so as to place the tax *situs* at the domicile of decedent, instead of at the domicile of the executor.

We hold, therefore, that the chancellor was in error in his ruling touching the "Mississippi assets," save only as to the shares of bank stock.

*Canadian Assets.* The same considerations support the chancellor's ruling as to what is termed the Canadian assets. Clearly, also, this deposit was in any view, there being no Canadian creditors of decedent shown to exist, referable to the place of primary or domiciliary administration by the executors, Maury county. If they meant to attempt to circumvent the taxing authority of this State by the placing of the deposit, first in New

York (controlling and checking on same in Tennessee the while), and later in Mississippi, they failed, since the act of realization was that of the Tennessee executors, who could not thus divert the asset from the domiciliary administration into another jurisdiction, even for administration purposes proper. *McCabe* v. *Lewis*, 76 Mo., 296; *Embry* v. *Millar*, 1 A. K. Marsh (Ky.), 302, 10 Am. Dec., 732; *Sedgwick* v. *Ashburner*, 1 Bradf. Sur. (N. Y.), 105; *Schley's Estate*, 11 Phila. (Pa.), 139; Id., 2 Wkly. Notes Cas. (Pa.), 684; *Probate Court* v. *Matthews*, 6 Vt., 269; *Peck* v. *Mead*, 2 Wend. (N. Y.), 470; *Hoes* v. *New York, etc., R. Co.*, 173 N. Y., 435, 66 N. E. 119; *Railroad* v. *Herb*, 125 Tenn., 408, 418, 143 S. W., 1138.

It was, further, error on the part of the chancellor not to allow the penalty on the Canadian assets and on the Mississippi assets in so far as they are herein declared taxable in this State, as is provided for in, and as had been allowed by the trustee proceeding under, Acts 1907, ch. 602, sec. 30, subsec. 5.

Other errors assigned are disposed of orally. Decree of the chancellor is modified, and the cause remanded for proceedings not inconsistent with the above rulings.