BENJAMIN F. ABBOTT *Administrator of* LESTER ABBOTT *v.* NEWELL COBURN AND CAROLINE COBURN *his wife;* ABEL LYMAN, *trustee.*

*Administrator. What choses in action recoverable by.*

The jurisdiction of a probate court, in granting administration, cannot be collaterally attacked.

Debts due to a deceased person can be collected and administered upon, in the first instance, only in the state where the debtor resides. If paid to another administrator. the payment will be no protection against a suit in favor of an administrator appointed in that state.

If an intestate did not reside in this state at the time of his decease, money due to him from, or money belonging to his estate which is paid to a person who does not reside in this state, cannot be recovered of such person in an action brought by an administrator appointed here.

The debtor or person receiving the money would only be liable to an action in favor of an administrator appointed in the state of the residence either of the debtor or intestate.

ASSUMPSIT. The parties agreed upon the following statement of facts.

The intestate, Lester Abbott, about the year 1845, removed from Brookfield, in this state, to Lowell, Mass., and there resided till December, 1848, when he went to California, leaving his wife and child in Lowell. The said Lester died in California in the summer of 1850, leaving a small amount of property which, soon after his death, one John Hutchinson collected together and converted into money, and, after paying what few debts the said Lester was owing there together with the expenses of his funeral and of looking up the property, the balance, amounting to two hundred and thirty-five dollars, he transmitted to the defendant Caroline, who was then the widow of the said Lester, by one Henry Cooley who was then returning to Vermont. The money was delivered to the said Caroline, by Cooley, sometime in the spring of 1851 ; and she gave her receipt for the same, and loaned it, with some more which she then had, to the plaintiff Benjamin F. Abbott, for which he gave her his note dated the first of April, 1851. The said Lester, before going to Lowell in 1845, disposed of all his property and never afterwards resided in Vermont; but after he went to California, the defendant Caroline came back to Brookfield with her child in the spring of 1849, and there remained till the spring of 1850, keeping house a part of the time, and then returned to Lowell where she has resided ever since.

The defendant Caroline sued said note and, at the June Term of the Orange county court, 1852, obtained a judgment upon it, and put the execution into the hands of the trustee, a deputy sheriff, who collected the money of the said Benj. F. the day that this writ was served upon him as trustee, which was the 24th day of September, 1852.

On the 9th day of September, 1852, the said Benjamin F., was appointed administrator of the estate of the said Lester Abbott by the probate court for the district of Randolph in this state.

The defendants were married on the 24th of June, 1852, at Northfield in this state ; and the next day, or next day but one, they returned to Lowell, where both of them resided at, and before said marriage, and where they both have resided ever since.

At the time of his death, and the granting of the said letters of administration, the said Lester Abbott had no known property, and

never had had any in this state after his removal in 1845, except-ing the money so sent by Cooley.

There was no administration upon the estate of the said Lester in the state of California. At the time of the service of the writ in this case the defendants were neither of them in this state.

The said Lester Abbott was owing debts in this state which have been presented to and allowed by the commissioners on his estate; but no property of his has been found or appraised, and the appraisers have made no report.

Upon the foregoing statement of facts, the county court, January Term, 1856,—UNDERWOOD, J., presiding,—rendered judgment for the plaintiff. Exceptions by the defendants.

*W. Hebard* for the defendants.

The facts admitted, show that the probate court had no jurisdic-tion of this case, and consequently could not clothe the plaintiff with any power to act in the capacity of administrator.

1st. Lester Abbott was not an inhabitant of this state at the time of his death, but was an inhabitant of *California*, and died there.

2d. At the time of his death he had no property in this state, and had had none since he ceased to be an inhabitant, which was in 1845. There consequently was nothing for the law to act upon; and the doings of the court, in appointing the plaintiff administra-tor, was a nullity.

The want of jurisdiction appearing upon the record, and agreed to in the statement of facts, it may be inquired into collaterally; Comp. Stat. p. 323, Sec. 18 ; *Lawrence* v. *Englesby*, 24 Vt. 43.

The probate court is a court of special and limited jurisdiction, and derives all its powers from the statute ; and when it exceeds the authority conferred by the statute, its acts are all void ; *Clapp* v. *Beardsley*, 1 Aiken 168 ; *Hendrick and others* v. *Cleavland*, 2 Vt. 329.

The plaintiff, in this case, is what is termed a foreign administra-tor.

The principal administration would be in California where Lester Abbott died, or in Massachusetts where his family resided at the time of his death.

The matter sued for in this writ is a *chose in action*, and the debtor resides in Massachusetts, and whether administration has been taken out there or .not does not affect the question.

" The administator here has no control over choses in action, when the ,debtor resides out of the state;" *Admr. of Bullock* v. *Rogers*, 16 Vt. 294.

The plaintiff could have given no discharge of this debt which would be available in Massachusetts when the administrator there should sue for this debt; *Vaughn* v. *Barret*, 5 Vt. 333; *Lee* v. *Haven*, Brayt. 93; *Dodge* v. *Wetmore*, Brayt. 93; *Stearns* v. *Gaylord*, 11 Mass. 256; *Goodwin* v. *Jones*, 3 Mass. 514.

Property remitted from one jurisdiction to another, an administrator appointed in the jurisdiction to which the property is remitted cannot assert a claim to it; Story's Eq. Jurisprudence, Vol. 1 Ch. 9, Sec. 584; Story's Conflict of Laws, Sec. 518.

*P. Perrin* and *J. P. Kidder* for the plaintiff.

1. The judgment of the probate court, in granting administration, is conclusive as has often been decided by this court; and the statute, p. 323, Sec's. 17 and 18, makes it so also; *Driggs, Admr. of Rhoda Kinney* v. *Abbott*, 27 Vt. 580; *Sutton* v. *Sutton's Estate*, 13 Vt. 71; *Giddings et al* v. *Smith et al*, 15 Vt. 344.

2. The statute, p. 257, Sec. 11, certainly contemplates the bringing of actions by trustee process, when the debtors reside out of this state, and prescribes the mode of service in such cases; and such actions have been repeatedly sustained in this state, even where both plaintiff and defendant resided out of the state. See statute, p. 243, Sec. 10; *Twombly & Sax* v. *Clark & Tr.*, 13 Vt. 118; *Chase et al* v. *Houghton et al & Tr.*, 16 Vt. 594; *Ward & Co.* v. *Morrison & Tr.*, 25 Vt. 593.

3. The statute treats the service of a trustee process as an effectual attachment of the defendant's property in the hands of the trustee; statute, p. 257, Sec. 11.

4. The object as well as the necessity of bringing this suit here was to secure the debt by trustee process, and this could not be effected where the debtor then resided, as the trustee resided in this state.

5. The attachment in this case was made in accordance with

the statute. The property attached came into the hands of Mrs. Coburn in this state. It went into the hands of the trustee in this state. The implied promise to pay was in this state, and the defendants resided in this state when the property went into Mrs. Coburn's hands.

6. The goods and estate came to the hands of the administrator, (plaintiff,) by relation, back to the time that Mrs. Coburn received them, and n#t at the time of the decease. It was when all the parties resided in this state, and we insist that the suit was properly brought here; *Welchman Admr.* v. *Sturgis,* 66 C. L. 552.

7. The parties in this case have appeared by themselves and their attornies, and submitted themselves to the jurisdiction of the courts of this state.

The opinion of the court was delivered by

REDFIELD CH. J. In regard to the jurisdiction of the probate court, to grant administration in this state, we think the case comes within the general principle so often announced, that it cannot be attacked collaterally, but the question must be raised, by some proceeding before that court in the first instance, which could only be revised in this court by appeal to the county court, and exceptions or writ of error to this court. The consideration that the facts are agreed upon in this case, can make no difference. The proceeding is not in the proper court for the testimony to operate, otherwise than collaterally.

But we do not see but the same question virtually arises in regard to the plaintiff's right to recover this money of the widow of the deceased; *i. e.,* if this is all the estate there is in this state.

The proper place for the principal administration in this case, is undoubtedly not here. It is either in California, or in Massachusetts, in one of which places the intestate had his residence at the time of his decease. This money should have been administered either in one or the other of those states. And the fact that no administration has yet been taken in either of those states, will make no difference, as that may be done hereafter. We should probably be bound to decide this question the same as if an administration existed in Massachusetts, and a suit were there pending for this same money.

It is well settled that if the. debtor resided in this state at the time the money was received, as she did in Massachusetts, that any discharge of a foreign administrator could not affect the right of the administrator in this state to recover the debt; *Vaughn* v. *Barrett*, 5 Vt. 333, and cases there cited.

In regard to the principal administration, it seems to be well enough settled in some states, although the rule may not be settled here, that assets brought from a foreign jurisdiction into the one of the domicil of the intestate, are to be there administered. These funds then did properly belong to the jurisdiction of California or Massachusetts, and should have been there remitted, and administered.

The intestate had his residence in Massachusetts up to December, 1848, and left his wife and child there when he went to California; and there is nothing in the case to show that he ever changed his residence to any other place. It is obvious he had no residence in Vermont at the time of his decease. His wife could not change his residence here, in his absence, and without his consent, and she returned to Massachusetts in the spring of 1850, "where she has ever since resided," as the case states. So that Massachusetts is probably to be regarded as the place of the domicil of the intestate, at the time of his decease, and was clearly the place of residence of this debtor, at the time she received the money.

The funds, then, which were collected in California, should have been remitted to Massachusetts and there administered, or else retained in California; and as the widow then resided in Massachusetts, we think paying them to her, whether the act was done in that state or in this, is to be regarded as remitting them to the place of the domicil of the deceased, and that they are not liable to be administered in this state, or in any other place out of Massachusetts, unless in California.

It is well settled that choses in·action belonging to the deceased are, for this purpose, to be regarded as having their situs in the place of the residence of the debtors. That was the rule of the common law, as to simple contract debts; Carthews 373; Salkeld 37; Lord Raymond 562. And any discharge in regard to these funds out of California where they were at the decease, unless in

the place of. the domicil of the deceased, at his death, will be altogether unavailing. It is settled in this state by the cases referred to, beyond all question, that the release of the plaintiff for these funds would be no discharge either to Hutchinson, who collected them, or to Cooley, who brought them out of California, or to the defendants who received them. And by parity of reasoning, as we think, a judgment in his favor would have no greater effect. That could only extend to the merger of *his* rights. And if he had no right to the funds, the judgment could not affect the rights of an administrator in Massachusetts where the debtor resides. Unless, then, the funds have been remitted to the place of the domicil of the deceased, which Vermont clearly is not, all who have had any agency in collecting or transmitting them are liable to the suit of an administrator, either in Massachusetts or California, according to the case of *Welchman* v. *Sturgis,* 66 Com. L. 552 ; and *Bullock Admr.* v. *Rogers,* 16 Vt. 294. And any judgment we might here give would afford no protection against such suit. For if the defendants are liable here, because the money was received here from Cooley, which does not appear, but may be true, then Cooley is liable here also for paying it over, as was held in the English case last cited, and he is equally liable in every state through which he carried the money. And if the defendants are liable here, so are they equally in New Hampshire, if they carried the money from this state to Massachusetts. But, according to the case in 66 Eng. Com. Law R., Hutchinson is liable as for a tort, as executor de son tort, for collecting these funds ; and it is only by waiving the tort, that any action for the money lies. But it is questionable whether that rule will apply indifferently to all persons to whom that money came, as money has no ear mark, and is incapable of being identified. For Hutchinson's paying over the money did not release his liability. He is still liable for all the money he collected, and cannot deduct even the debts which he paid for the estate. And the persons of whom he collected the money were not discharged of their obligation to the estate by payment to him, unless he remitted the money to the rightful administrator in the place of the domicil. And if Cooley were ever liable, his paying over the money to the widow will not release him until she remits the money to the rightful administrator in the place of domicil.

That, then, is the duty of Hutchinson, Cooley and the defendant Caroline.

A debt, by the decease of the creditor, becomes *bona notabilia*, or assets in the place of residence of the debtor ; and, according to our decisions, no one but an administrator in that state can collect it, or release it, or properly administer it. It is no longer transitory, as before the decease of the creditor, but becomes local, and is confined to the probate jurisdiction of the debtor's residence, unless it be remitted to the administrator of the place of the domicil of the deceased, as is held in some states ; but that is no discharge here, I think. That is the very point decided in *Bullock Admr.* v. *Rogers*, 16 Vt. 294. That action, it is expressly decided there, would not lie for the debt because the debtor resided in New York, but it was sustained for the instrument which did belong to the administrator in Vermont that being the place of domicil. We think, therefore, that this action cannot be maintained, upon the facts stated, in the courts of this state.

We are liable to some confusion of perception upon the subject of disposing of the effects of deceased persons, by attempting to keep up, in our minds, the same views and analogies which apply to the same species of property while all parties concerned are still living ; and also by apprehending money as capable of identification.

The truth undoubtedly is, that, as to choses in action, after the decease of one of the parties, they are incapable of any change, until the intervention of a personal representative of such deceased party, appointed by the proper municipal authorities of the place of the domicil of the debtor. Such choses in action can never be transferred, paid, or in any other manner affected, while one of the parties is legally extinct. Upon the appointment of the representative, the law throws the rights of the deceased party upon him just as they existed at the decease, except that any interference with the concerns of the deceased is regarded as a tort, and an action accrues from the perpetration of the wrong, by relation, which the representative may take up and prosecute.

Money, too, is incapable of identification. Hutchinson, by attempting to collect debts due Lester Abbott did not in fact obtain any money of the deceased. It was the money of the persons of whom

he obtained it, and when paid to him it became his own. The debtors of the deceased did not by the transaction pay their debt. They, at most, acquired the obligation of Hutchinson to see it paid in a legal manner, in consideration of having received the amount of money. And the law, regarding this as a tort, will allow the representative of the deceased to waive the tort, and sue for the money by means of a legal fiction. So, too, all persons consenting to this tort, and receiving the avails of it, with the same undertaking to see it paid to the legal representative of the deceased, may possibly be liable for the money at the suit of the representative, by means of a legal fiction. But in all this, the law keeps up no idea of the identity of the money. Nor is it of the least importance whether it be the identical money or not. If that idea were to affect the case, the present plaintiff might himself be said to have received the money of the estate, and therefore be bound to administer it. But nothing of that is found. For he received the money of the widow, and clearly did not implicate himself in the original tort by which it was obtained, inasmuch as he was to pay it back to her. The money, all along, belongs to the several persons who pay and receive it. But by the transaction they may or may not be regarded as consenting to the original tort, and adopting it. But if they do, the consent to the original wrong is not itself a new and independent tort, to be answered for in the place where the transaction occurred.

According to the decisions in this state, I think the transmitting of this money to Massachusetts, and having it there administered that being the place of the domicil of the deceased, would afford no protection against the claim of an administrator appointed in California, who should sue either Hutchinson or the original debtors; or at least that is questionable upon our decisions. But Judge Story lays down the rule, in his Conflict of Laws, that remitting the funds to the administrator in the place of domicil will be a discharge, and, upon principle and for convenience, I think it should be so. But he refers to no cases where it has been so held in England, and I doubt if any such principle has ever been there recognized. I think that is the rule of some of the American states, but no such rule could be applied to a merely auxilliary administration, which the plaintiff's clearly is. It seems to us,

therefore, impossible to find any satisfactory ground upon which the plaintiff's right to this money can be vindicated. There may have been actions maintained in this state, where this same question might have been raised and was not. Courts do not ordinarily feel bound to go beyond the questions raised in argument, and when that is attempted, it is often at the hazard of making a wrong decision. And where the objection is merely technical, it would never be raised by the court, if not pointed out, or certainly, not ordinarily. Judgment reversed, and judgment for the defendant.