Sullivan,  
Nov. 2, 1915.

## JOHN CROSBY & a., Ex'rs, v. CHARLESTOWN.

For the purpose of taxation, the property represented by stocks, bonds, and notes has its *situs* where the owner has his domicile, and not where the documentary evidence of it happens to be deposited for safe keeping.

Intangible property rights which have their *situs* here because of the owner's residence are not transferred to others by his death, but remain subject to the control of this state and to taxation here until in some way removed to another jurisdiction.

Power to provide for the administration of an estate necessarily implies power to protect and preserve it until administration can be effected; and the rights of protection and taxation being reciprocal, there is no constitutional objection to the assessment of a tax against property in the interim between the death of the owner and a grant of administration upon his estate.

A tax rightfully assessed against the property of a deceased resident is not to be abated because another has been levied and paid in a state where ancillary administration was granted.

Prior to his appointment by the probate court and the filing of a bond, an executor named in a will is not to be considered as having that trust, has no control over the testator's estate, and cannot be regarded as the owner thereof for the purpose of taxation.

The original administration of an estate is that granted in the jurisdiction where the decedent was domiciled at the time of his death, and by which the representative acquires probate title to all the personalty, wherever situate; while an ancillary administrator is vested with title to only such personal property of the decedent within his jurisdiction as may be considered assets for the purpose of administration therein.

Intangible property rights owned by a deceased resident upon whose estate no administration has been effected are not assets for ancillary administration where the stocks, bonds, and notes are situate, merely because such securities are found in that state, and are taxable to the estate by the town in which the owner was domiciled at the time of his death.

PETITION, for an abatement of taxes. The question whether an abatement should be granted as matter of law was transferred without a ruling from the November term, 1913, of the superior court by *Chamberlin*, J., upon the facts hereinafter stated.

Edna M. Gilson, of whose estate the plaintiffs are the executors named in her will, died at Charlestown on September 14, 1912, leaving real estate located there, together with household furniture and clothing. She also left real estate in Minneapolis, Minnesota, and stocks, bonds, and notes contained in a safety deposit vault in that city. This personal property, or the securities themselves, had never been kept in this state. Of about thirty legatees named in her will, six are residents of Charlestown. At the date of her decease the testatrix was a resident of and had her domicile in Charlestown.

Both executors have resided in Minneapolis for many years. The will was approved and allowed in Minneapolis, and the plaintiffs were appointed executors on November 18, 1912. An authenticated copy of the will was filed in the probate court for Sullivan county in this state on December 4, 1913, original administration was granted to the plaintiffs as executors, and they thereupon qualified as required by law.

April 1, 1913, the selectmen of Charlestown assessed against the estate a tax upon the property represented by the securities which were kept in Minneapolis, and which were inventoried, as they were the year before by the testatrix herself, as "money on hand, at interest, or on deposit"; and it is this tax which the plaintiffs seek to have abated. The same securities or property were taxed to the estate in Minneapolis for the year 1913, and the plaintiffs have paid the tax.

*William M. Chase, Hosea W. Parker,* and *Allen Hollis (Mr. Hollis* orally), for the plaintiffs.

*Ira G. Colby, Hurd & Kinney,* and *John E. Allen (Mr. Colby* and *Mr. Allen* orally), for the defendants.

PARSONS, C. J.    It is in effect conceded by the plaintiffs that the property of the deceased represented by the stocks, bonds, and notes had been properly taxed to her, before her death, at her domicile in Charlestown.    While the securities were in fact held on deposit in Minnesota and were not actually in this state, the property represented by them, or her proprietary right to have and enjoy the beneficial use of them, inhered in the place of her domicile. For the purpose of taxation, her property right in such intangible property had its *situs* where she had her domicile, and not where the documentary evidence of it happened to be.    This proposition is so well established that it is not open to serious disputation.    *Bullock* v. *Guilford*, 59 Vt. 516; *People* v. *Smith*, 88 N. Y. 576; *Commonwealth* v. *Williams*, 102 Va. 778; *Commonwealth* v. *Peebles*, 134 Ky. 121; *State* v. *Mortgage Co.*, 76 Minn. 155; *Mackay* v. *San Francisco*, 113 Cal. 392; *State Tax on Foreign-held Bonds*, 15 Wall. 300, 324; *Kirkland* v. *Hotchkiss*, 100 U. S. 491.    In some of the cases it is held that intangibles in a state other than that of the owner are taxable at the place of their actual location when they are there for use in business and not merely for deposit.    But it is unnecessary to consider that exception to the general rule in this case, for the stocks, bonds, and notes of Miss Gilson were in Minnesota for safe keeping merely.    They were, therefore, taxable at her domicile in this state as property whose *situs* was there.

The tax of which the plaintiffs complain was assessed April 1, 1913, after Miss Gilson's death, and was assessed against her estate. No administration had been granted in this state, and the tax was assessed under the statutory provision for the contingency that at the taxing time there was no representative of the estate.    P. S., c. 56, s. 26; *Kent* v. *Exeter*, 68 N. H. 469, 470.    A similar provision appears in the Massachusetts law.    Mass. G. S. (1860), c. 11, s. 12; *Dallinger* v. *Rapello*, 14 Fed. Rep. 32.    The question in the case cited related to a tax assessed against an executor after his appointment; and Judge *Gray* says of the provision of the Massachusetts statute similar to that under which the present tax was imposed: "The provision  .  .  .  permitting the tax, before the appointment of an executor or administrator, to be assessed generally to the estate of the deceased where he last dwelt, appears to have been intended to prevent the personal property from escaping taxation altogether before such appointment, and not to extend the liability of the executor or administrator for taxes assessed after his appointment."    The other Massachusetts cases relied upon (*Putnam*

v. *Middleborough*, 209 Mass. 456; *Gray* v. *Lenox*, 215 Mass. 598) are upon similar facts, the question being what property was held by the executors so as to be properly taxable against them in Massachusetts. No tax has been assessed against the plaintiffs.

Their argument appears to be, that on the day of the assessment of the tax they held the legal title to all of Miss Gilson's estate, and being non-residents, no tax could properly be assessed against the property that had been hers. They contend, citing *Commonwealth* v. *Williams*, 102 Va. 778,—1 Ann. Cas. 434: "1. Certificates of stock, bonds, and other evidences of indebtedness, being mere symbols of a property which consists of the intangible, incorporeal right of the creditor to demand of his debtors performance of their obligations, are taxable in the state where the owner thereof resides, no matter where the actual *situs* of such evidences of debt may be. 2. After the death of the owner of intangible personal property, its *situs* for the purposes of taxation is the residence or domicile of the executor·in whom is the legal title thereto, although the actual *situs* of the evidences of such property may be elsewhere." Conceding this to be a correct statement of the law, the question is: Does it appear from the facts found that the plaintiffs, as executors of Miss Gilson, had the legal title to any of the property taxed? They base their claim upon the fact that they are named as executors in her will.

While by the English law an executor could do many, indeed most, acts pertaining to his office, except maintaining and defending suits, before proof of the will or obtaining letters testamentary (2 Bl. Com. *507), in most of the American states he has no such legitimate authority before probate. 2 Red. Wills 13. Not only is the executor here forbidden to intermeddle with the estate of the decedent until he has given bond to the judge, one condition of which must be the payment of legacy and succession taxes, but he is not to "be considered as having that trust" until after filing such bond. P. S., c. 188, ss. 12, 13, 14; Laws 1907, c. 86. In this case, not being residents the plaintiffs could not claim the appointment as of right and could not be appointed unless in the opinion of the court other circumstances rendered the appointment proper (P. S., c. 188, s. 4; *Pickering* v. *Pendexter*, 46 N. H. 69, 71), nor unless found suitable by the probate court. P. S., c. 188, s. 3; *Carr* v. *Corning*, 73 N. H. 362. Although an executor named in the will has sufficient interest to maintain an appeal from a decree of the probate court disallowing the will (*Shirley* v. *Healds*, 34 N. H. 407), these statu-

tory provisions make it clear that before grant of administration to him he has no control over the estate, and the court are forbidden to consider him as having the trust. Having no control of the property and not to be considered as executor, he cannot be held to be the owner for the purposes of taxation. The executor as well as the administrator, by force of the statute, obtains his title from the grant of administration. *Kent* v. *Exeter*, 68 N. H. 469, 470. In the execution of his trust it appears to be immaterial whether he calls himself executor or administrator. *Finney* v. *Barnes*, 97 Mass. 401; *Sheldon* v. *Smith*, 97 Mass. 34. Either term means the personal representative of the deceased. *Trethewey* v. *Helyar*, L. R. 4 Ch. Div. 53; P. S., c. 188, s. 1.

Miss Gilson, the testatrix, an inhabitant of Charlestown in this state, died at Charlestown on September 14, 1912. It was the duty of the executors named in the will to cause her will to be proved in the probate court of Sullivan county within thirty days. P. S., c. 187, ss. 2, 3. For reasons or purposes not disclosed in the case, they disregarded the command of the statute, and the will was not proved in the court of her domicile until December 4, 1913, over a year later, the tax in dispute being assessed in the meantime. If the petitioners had complied with the law, and duly proved the will and secured their appointment as executors, they could then have raised the questions to what extent the law of the state does or can tax the intangibles of the estate of a deceased resident in the hands of non-resident executors. As the case stands, the only question is whether since the testatrix's death anything had occurred at the time of assessment to free from liability to taxation here her estate or any part of it admittedly taxable to her here while living.

Choses in action, after the decease of one of the parties, are incapable of any change until the intervention of a duly appointed personal representative. *Abbott* v. *Coburn*, 28 Vt. 663, 670. But it appears that the plaintiffs had been appointed executors in Minnesota, had obtained possession of the securities of the estate held there for safe keeping, and had been taxed therefor in Minnesota on January 1, 1913. The fact that property claimed to be taxable here may be subjected to a foreign tax is immaterial. The question is, as stated in *Berry* v. *Windham*, 59 N. H. 288, 289, "where was the plaintiff's deposit legally taxable?"; and in *Robinson* v. *Dover*, 59 N. H. 521, 526, the court say: "The question is, not whether the plaintiff's deposit is taxed in Massachusetts, but whether it is taxable in Massachusetts or in New Hampshire. If it were taxable

here, the tax could not be abated on the ground that the property was wrongfully taxed in Massachusetts." It would be a strange perversion of justice to hold that the rightful tax here must be abated because the assessors of some other state have put the property on the list for taxation there, or because the owner has seen fit to pay the tax there assessed. *Winkley* v. *Newton*, 67 N. H. 80. The property being legally taxable to Miss Gilson here in her lifetime, the question appears to be whether by or since her death the legal title has devolved upon the plaintiffs, who are non-residents, so that it is not taxable.. This involves two questions: (1) Whether the plaintiffs had at the time of the tax acquired title as executors. (2) Whether such a title renders the tax illegal. The second question obviously need not be considered unless the first is answered in the affirmative.

It is urged that "the securities and deposits in Minnesota in respect to which the tax was assessed were on April 1, 1913, in the actual possession and custody of the executors, under appointment as executors of the will in the courts of that state, and that they thus had title and all the other incidents of ownership." The claim is very skillfully drawn. Nowhere in the briefs is the claim distinctly made that this grant of administration gave the plaintiffs title to the property evidenced by the papers preserved in a safety vault in that state. Lawful possession of these papers by the Minnesota custodians gave them in Miss Gilson's lifetime no title to the property represented. Mere lawful custody gave no more title to the plaintiffs. They had title as executors to such property and such only as was given by the decree of ancillary administration, which alone, upon the facts found and the pleadings before it, the Minnesota court had power to grant. It may be a fiction of the law which considers the domicile of the owner the *situs* for the taxation of intangible property, but it is a fiction supported by all the authorities. To hold the *situs* for taxation to be determined by the location of the evidences of title alone would be a bald assumption supported by no authority. It is elementary that "the primary probate jurisdiction of wills, and of everything pertaining to the settlement of estates, is exclusively in the place of the domicile of the deceased" (*Leonard* v. *Putnam*, 51 N. H. 247, 250), and that the personal property, wherever administered, is still to be distributed in accordance with the law of the domicile. *Goodall* v. *Marshall*, 11 N. H. 88, 89. Miss Gilson's intangible property rights, having their *situs* here because of her residence, were not destroyed nor trans-

ferred to others by her death. They still remained subject to the control of this state and to taxation here, until in some way removed from that jurisdiction. *Mann* v. *Carter*, 74 N. H. 345.

It has been said "that the administrator is the officer of the state court appointing him, and that property placed in his possession by order of that court is in the custody of the court" (*Byers* v. *McAuley*, 149 U. S. 608, 616); and that "the administration laws . . . are not merely rules of practice for the courts, but laws limiting the rights of parties," and that after the death of a decedent and the appointment of his administrator, the estate "was thereafter in contemplation of law in the custody of the probate court, of which the administrator was an o<sup>ff</sup>icer." *Yonley* v. *Lavender*, 21 Wall. 276, 280. If the jurisdiction of the probate court attaches only upon its exercise by the appointment of an executor, that jurisdiction and custody are by virtue of the laws of the state. The state having power to create and confer upon probate courts jurisdiction of the estates of deceased residents, that power can come only from control of the property rightfully belonging to the state upon the death of the decedent. Power to provide for the administration of an estate necessarily involves power to protect and preserve the estate until administration can be effected; and the right of protection and taxation being reciprocal, there is no constitutional difficulty in the taxation of the property in the interim. In providing for the due administration and distribution of the estates of its citizens at death, the state might have provided that none but residents should be appointed to administer the same, as appears to be the law in some states. *Frick's Appeal*, 114 Pa. St. 29; *In re Estate Neubert*, 58 S. C. 469; *Child* v. *Gratiot*, 41 Ill. 357; *In re Stevenson*, 72 Cal. 164; *Estate of Newman*, 124 Cal. 688,—45 L. R. A. 780, 783; 18 Cyc. 96. Or it might have been provided that a nonresident appointed to administer the estate of a resident should have an official residence in the town where the deceased last dwelt, or elsewhere in the state, for any purposes connected with the administration of the trust, including taxation. *Commonwealth* v. *Peebles*, 134 Ky. 121,—23 L. R. A. N. S. 1130.

The only legislation so far found necessary appears to have been the enactment of the statute providing for the assessment of taxes in the interim between death and administration. Under this statute, the question may arise whether the legislature, in authorizing the taxation of the property of an estate to the heirs generally of a decedent, intended that a tax should be laid upon property of

the estate to which the legal title had been secured by the grant of administration to a living person by a court of competent jurisdiction. That question is not material, however, unless it appears that the tax complained of has been laid in part upon property of the estate to which the plaintiffs have secured such title.

It is found in the case that the probate in this state was original or domiciliary, from which it follows that the Minnesota jurisdiction is ancillary. The presence of assets gives jurisdiction for the grant of administration. It is immaterial in which jurisdiction the grant is first made; the original or domiciliary jurisdiction is that in which the deceased was domiciled at death. *Knight* v. *Hollings*, 73 N. H. 495, 499.

By the domiciliary, probate title is given to all the personal estate wherever situate, so "in the absence of ancillary administration or statutory prohibition, the domiciliary administrator or executor has authority to take possession of and remove the goods or effects of the decedent in another jurisdiction, or to collect a debt due from a debtor residing therein, if voluntarily given up or paid, and give a good acquittance and discharge therefor. . . . So, too, he may sell and assign stock in a foreign corporation, and the corporation may voluntarily consent to its transfer by accepting the outstanding certificate and issuing a new one to the purchaser." *Luce* v. *Railroad*, 63 N. H. 588, 590, and authorities cited; *Gove* v. *Gove*, 64 N. H. 503. The disability under which the domiciliary representative labors is merely inability to enforce the rights of the decedent by suit in another jurisdiction, in the absence of a statute permitting the same. In this state provision is made for the execution of his office in the state by a foreign administrator, without the formality of ancillary administration. P. S., *c.* 189, *ss.* 23, 24. Such statutes are to be found in most states, and there may be one in Minnesota. See Minn. G. S. (1913), *s.* 7302. But whether ancillary administration was necessary or not, such administration was had, and the question is: What have the plaintiffs obtained thereby?

The ancillary representative, upon the grant of administration to him, becomes exclusively vested with the title to all the assets within the jurisdiction. But the title of the ancillary representative extends only to property of the decedent which is assets for the purpose of administration therein. *Grayson* v. *Robertson*, 122 Ala. 330,—82 Am. St. Rep. 80; 13 Am. & Eng. Enc. Law (2d ed.) 931, 932; 18 Cyc. 1227. "It is one of the necessary deductions from the

general character ascribed to this administration at the domicile of the decedent, by the authorities, that such administration is in its nature general and unlimited, while the ancillary administration is both special and limited. . . . That administration is special because it extends merely to such personal effects of the decedent as may be found at his death in the place of ancillary administration, while · . . . the scope of the original administration is commensurate with the whole personal estate of the decedent wherever situated. . . . The ancillary administration is primarily concerned only with the debts of the decedent at the place of ancillary administration, and with the administration of the assets only to the extent requisite to pay such debts." *Cureton* v. *Mills*, 13 S. C. 409, 416, 419,—36 Am. Rep. 700, 703, 705; *Abbott* v. *Coburn*, 28 Vt. 663; *Willard* v. *Wood*, 1 App. D. C. 44; *Ramsay* v. *Ramsay*, 97 Ill. App. 270; 2 Red. Wills 21.

If it be assumed, then, that the grant of ancillary administration conferred such title on the plaintiffs as to exclude the property from the operation of the tax law in this state, the material inquiry is: What of the property described in the petition was assets for administration in Minnesota? "The general rule of law is well settled, that for the purpose of founding administration all simple contract debts are assets at the domicile of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the same is found or payable." *Wyman* v. *Halstead*, 109 U. S. 654, 656. "The ancillary administration cannot be allowed to draw into its jurisdiction any assets not locally situated within its limits." 2 Red. Wills 21. "No authority to which our attention has been called holds that the mere fact that the evidences of debt happen to fall into the hands of an ancillary administrator, appointed at a place other than the domicile of the intestate or of the debtor, vests the title to the debt in him." *Moore* v. *Jordan*, 36 Kan. 271, 276,—59 Am. Rep. 550, 554. The present argument has not developed such authority.

No other grounds have been urged in support of the plaintiffs' claim. It does not appear that the tax has been assessed upon property to which the plaintiffs could claim title under any view of the law. "Stocks, bonds, and notes contained in a safety deposit vault" located in Minnesota are not necessarily assets for administra-

tion in Minnesota. As no ground appears requiring an abatement as matter of law, the order must be,

*Petition dismissed.*

All concurred.