NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
Case No. 2024-0234
Citation: Morris v. Comm'r, N.H. Dep't of Revenue Admin., 2025 N.H. 37

ROBERT MORRIS & a.

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION

Submitted: March 6, 2025
Opinion Issued: August 19, 2025

Pierce Atwood LLP, of Portland, Maine (Jonathan A. Block and Olga J. Goldberg on the brief), for the plaintiffs.

John M. Formella, attorney general and Anthony J. Galdieri, solicitor general (Mary A. Triick, senior assistant attorney general, on the brief), for the Commissioner, New Hampshire Department of Revenue Administration.

COUNTWAY, J.

[¶1] The plaintiffs, Robert and Mary Morris, appeal decisions of the Superior Court (Ignatius, J.) denying their motion for summary judgment and, following a bench trial, upholding the decision of the New Hampshire

Department of Revenue Administration (DRA) that the Morrises were residents of New Hampshire and subject to New Hampshire's interest and dividends tax for six months in 2017.  See RSA 77:3, I(a) (2012) (repealed by Laws 2021, 91:101, as amended by Laws 2023, 79:88, effective January 1, 2025); RSA 21:6 (2012).  We affirm.

I.    Background

[¶2] The following facts were found by the trial court or are undisputed. The Morrises are married and have three adult children.  In 1996, they purchased a home in Connecticut near Mr. Morris' office in Stamford.  In 2003, the Morrises purchased a home in New London, New Hampshire to enjoy skiing and the lake.  Mr. Morris worked full time in 2017 as managing partner for Olympus Advisors (Olympus), a private equity investment firm.

[¶3] In the summer of 2017, the Morrises were considering relocating to their New Hampshire home in anticipation of Mr. Morris' semi-retirement.  In June 2017, the Morrises obtained drivers' licenses in New Hampshire and listed their New Hampshire home as their residence.  Both confirmed that they were New Hampshire residents on the form, and both signed the certification that read, in part, "I have paid all resident taxes or Interest and Dividends Tax (RSA 77) for which I am liable. . . . This application is signed under the penalty of unsworn falsification pursuant to RSA 641:3."  On June 21, 2017, the Morrises registered to vote in New Hampshire.  Each signed an affidavit that read in part:

> I understand that to vote in this ward/town . . .  I must be domiciled in this ward/town.  I understand that a person can claim only one state and one city/town as his or her domicile at a time.  A domicile is that place, to which upon temporary absence, a person has the intention of returning.  By registering or voting today, I am acknowledging that I am not domiciled or voting in any other state or any other city/town.

Below each of their signatures, the form states, "In accordance with RSA 659:34, the penalty for knowingly or purposefully providing false information when registering to vote or voting is a class A misdemeanor."  Although the Morrises registered to vote in New Hampshire, they never did.

[¶4] In June, and again in September 2017, the Morrises made estimated tax payments to New Hampshire totaling $510,000.  They also filed tax paperwork in April 2017 and September 2017 with both the Internal Revenue Service and the State of Connecticut using their New Hampshire address.  In addition, Mr. Morris' schedule K-1 from Olympus listed a Concord, New Hampshire address for the Robert S. Morris Revocable Trust.  In October 2017,

Mr. Morris filed an application for Olympus' registration as a foreign limited liability company with the New Hampshire Secretary of State's Office.

[¶5] In the summer of 2017, two of the Morrises' adult children were living in New Hampshire and two of the Morrises' cars were registered in New Hampshire. The Morrises testified that they kept their important personal possessions in their Connecticut home and attended doctors' appointments, were members of country clubs, had accountants and attorneys, attended church, and had close friends and relatives in Connecticut, and that the Connecticut home was their most important home. Mr. Morris' car was registered in Connecticut. The Morrises also introduced parking garage data at trial and Mr. Morris testified that he used this data, along with his calendar and credit card records, to determine that he spent only 51 days in New Hampshire between June 16 and December 31, 2017.

[¶6] Ultimately, the Morrises did not semi-retire to New Hampshire. The Morrises filed a resident Connecticut income tax return for 2017, and paid Connecticut resident income tax on their 2017 income. In March 2018, Olympus filed a business tax return summary in New Hampshire for the 2017 tax year, attached to which was a business enterprise tax return reflecting that a small proportion of compensation or wages was paid in New Hampshire in 2017. That compensation was also reflected in Olympus' business profits tax return. In October 2018, however, Olympus filed an amended business tax return with New Hampshire, which reflected that no compensation or wages were paid in New Hampshire for the 2017 tax year. In June 2018, the Morrises' tax advisor submitted an interest and dividends tax return to DRA, seeking return of the $510,000 estimated tax payments made in 2017. In or around August 2018, DRA's audit division initiated an audit of the Morrises' 2017 interest and dividends tax return.

[¶7] In June 2020, DRA issued a notice of assessment against the Morrises, concluding they were residents of New Hampshire between June 16 and December 31, 2017, requiring them to pay New Hampshire interest and dividends tax for that six-month period, and alleging that they owed additional interest and dividends tax payments. The total assessments included $1,010,489.00 in interest and dividends taxes, $74,126.93 in interest, and $50,048.90 in failure-to-pay penalties. The Morrises filed a petition for redetermination with DRA disputing the notice of assessment. Following a hearing, DRA upheld the notice of assessment. The Morrises appealed DRA's decision to the superior court. See RSA 21-J:28-b, IV (2020) (superior court "shall hear the appeal de novo"). The Morrises then filed a motion for summary judgment. DRA objected, the Morrises filed a reply, and the court held a hearing, after which the trial court denied the motion.

[¶8] Following a bench trial, the trial court ruled that the Morrises did not show by a preponderance of the evidence that DRA erred in determining

3

that they were residents of New Hampshire during the audit period, between June 16 and December 31, and that DRA's "failure to credit the Morrises for [interest and dividends] taxes already paid to Connecticut" was not unconstitutional. The trial court declined to rule on the Morrises' claim that the income DRA sought to tax was not interest and dividends income within the meaning of RSA chapter 77 because the Morrises did not develop the claim. The Morrises filed a motion for reconsideration, which the trial court denied. This appeal followed.

[¶9] The Morrises argue that the trial court erred when it: (1) found them to be residents of New Hampshire from June 16, 2017 to December 31, 2017; (2) ruled that the application of the interest and dividends tax to the Morrises' income and DRA's failure to credit taxes paid to another state did not violate the State and Federal Constitutions; (3) denied their motion for summary judgment despite the fact that DRA did not include a counter-affidavit with its objection to the Morrises' motion; (4) declined to rule on the Morrises' claim that the income DRA sought to tax was not interest and dividends income within the meaning of RSA chapter 77 because the Morrises did not develop the claim; (5) denied their request to abate the assessment of penalties and interest; and (6) denied their request for attorney's fees.

II.    Discussion

[¶10] At all times relevant to the issues presented in this appeal, the State of New Hampshire taxed "[i]ndividuals who [were] inhabitants or residents of this state for any part of the taxable year whose gross interest and dividend income from all sources . . . exceed[ed] $2,400 during that taxable period." RSA 77:3, I(a). A resident or inhabitant of New Hampshire was defined, at all times relevant to the case, as "a person who is domiciled or has a place of abode or both in this state and in any city, town, or other political subdivision of this state, and who has, through all of his actions, demonstrated a current intent to designate that place of abode as his principal place of physical presence for the indefinite future to the exclusion of all others." RSA 21:6. Pursuant to a DRA administrative rule:

> An individual's intent to establish residency by an ongoing physical presence within New Hampshire which is not transitory in nature, shall be evidenced by:
>     (a) Maintaining a home or other living quarters in New Hampshire;
>     (b) Spending a greater percentage of time in New Hampshire than in any other state;
>     (c) Having family living with them in New Hampshire;
>     (d) Advising any federal, state, or local agency that the individual considers herself or himself a resident of New Hampshire;

4

(e) Being employed or conducting business activity within New Hampshire or at a place to which the individual can readily commute from New Hampshire; or

(f) Registering to vote in New Hampshire.

N.H. Admin. R., Rev 902.01.  Also pursuant to administrative rule, any person who claims to be a "resident of New Hampshire to any state agency or political subdivision of New Hampshire, shall be deemed . . . [a] resident of New Hampshire for purposes of taxation of income unless the individual can prove, by a preponderance of evidence, that he or she is an actual resident of another jurisdiction."  N.H. Admin. R., Rev 902.04.

[¶11] The trial court applied these rules to the evidence and determined that the Morrises' actions between June 16 and December 31 evidenced an intent to establish residency in New Hampshire, and showed that New Hampshire was their "most important place" for the purposes of taxation.  The Morrises argue that the trial court erred as a matter of law because "instead of applying the controlling statute to the Morrises' facts," it applied an "invalid" administrative regulation, and that even if the trial court did not err in applying the rule, the trial court erred in finding that the Morrises' conduct evidenced an intent to establish residency in New Hampshire.

[¶12] The Morrises assert that Rule 902.01 is "invalid" because it "does not concern itself with RSA 21:6's focus on princip[al] place of physical presence for an indefinite period to the exclusion of all others," and is therefore inconsistent with the statute.  Because resolution of this issue requires us to construe the statute and regulations, our review is de novo.  See N.H. Resident Ltd. Partners of Lyme Timber Co. v. N.H. Dep't of Revenue Admin., 162 N.H. 98, 101 (2011).  When construing statutes and administrative regulations, we first examine the language used, and, where possible, we ascribe the plain and ordinary meaning to the words used.  Id.  Words and phrases in a statute are construed according to the common and approved usage of the language unless it appears from the statute that a different meaning was intended.  Id.

[¶13] In light of the plain language of the statute, the appropriate inquiry to determine whether the Morrises were residents of New Hampshire is not, as the Morrises contend, whether the evidence demonstrates that their New Hampshire abode was their principal place of physical presence, but, rather, whether the evidence demonstrates that the Morrises' "current intent [was] to designate" their New Hampshire abode as their "principal place of physical presence for the indefinite future to the exclusion of all others."  RSA 21:6 (emphasis added).  Rule 902.01 is consistent with the plain language of the statute.  It simply enumerates factors to be considered to determine intent and does not, as the Morrises assert, add to, detract from, or modify the statute. See Appeal of Cover, 168 N.H. 614, 621 (2016) (stating that "administrative rules may not add to, detract from, or modify the statute which they are

5

intended to implement").  Both the statute and the rule recognize that while the amount of time physically spent in New Hampshire is a factor to be considered, the length of time someone is physically present in New Hampshire during a particular timeframe is not dispositive.

[¶14] The Morrises assert that even if the rule was valid, the trial court misapplied it.  Applying Rule 902.01 to determine whether evidence supports the conclusion that an individual's intent was to establish residency by ongoing physical presence within New Hampshire involves a mixed question of law and fact.  Cf. Waterfield v. Meredith Corp., 161 N.H. 707, 712 (2011) ("the issue of domicile is a mixed question of law and fact").  Mixed questions of law and fact involve the application of a rule of law to the facts and the consequent determination of whether the rule is satisfied.  Poland v. Twomey, 156 N.H. 412, 414 (2007).  Accordingly, we will not disturb the trial court's factual findings unless they are clearly erroneous.  Id.  We review the trial court's application of the law to the facts de novo.  Forster v. Town of Henniker, 167 N.H. 745, 759 (2015).

[¶15] The trial court concluded that the Morrises' conduct in 2017 satisfied Rule 902.01, subsections (a), (c), (d), and (f).  The court found that the Morrises owned a home in New Hampshire, that two of their adult children used their New Hampshire home, that they advised state and local agencies that they considered themselves residents of New Hampshire when they registered to vote and obtained New Hampshire drivers' licenses, and that Mr. Morris registered his business as a foreign limited liability company with the New Hampshire Secretary of State.  Regarding subsections (b) and (e), however, the trial court concluded that the evidence weighed against a finding of residency.  The court reasoned that although the Morrises spent a significant amount of time in New Hampshire in 2017, it was "unclear" whether they spent more time in New Hampshire than in Connecticut.  It was also "unclear" whether Mr. Morris worked in New Hampshire in 2017, because while Mr. Morris testified that he did not, Olympus had reported compensation or wages paid in New Hampshire in 2017 before it amended its filing.  The court rejected the Morrises' argument that their conduct showed only "preliminary" steps in the process of considering semi-retirement in New Hampshire.  We conclude that the trial court's factual findings are amply supported by the evidence, particularly given that the Morrises, by claiming to be residents of New Hampshire when they obtained drivers' licenses and registered to vote, bore the burden of proving by a preponderance of the evidence that they were actual residents of another jurisdiction.  See N.H. Admin. R., Rev 902.04.  These findings also support the legal conclusion that through their actions between June 16 and December 31, the Morrises demonstrated an intention to designate their New Hampshire home as their "principal place of physical presence for the indefinite future."  RSA 21:6.

6

[¶16] We turn now to the Morrises' contention that the application of the interest and dividends tax to their income and DRA's failure to credit taxes paid to the State of Connecticut on the same income violated the New Hampshire Constitution's prohibition against double taxation and the Federal Constitution's Commerce Clause.  Our review of these constitutional questions is de novo.  Rand v. State, 177 N.H. ___, ___ (2025), 2025 N.H. 27, ¶7.

[¶17] We consider first whether taxing interest and dividends income that has already been taxed in Connecticut violates the New Hampshire Constitution.  Part I, Article 12 of the New Hampshire Constitution provides that "[e]very member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection."  Part II, Article 5 of the New Hampshire Constitution provides that the legislature has the power to "impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the said state."  It has long been understood that when applying this taxing authority, a law "shall not be so construed as to cause any property to be twice taxed."  Robinson v. Dover, 59 N.H. 521, 525 (1880); see also Opinion of the Justices, 76 N.H. 588, 590 (1911) ("It is a fundamental principle in taxation that the same property shall not be subject to a double tax, payable by the same party, either directly or indirectly." (quotation omitted)).  Although we recognized long ago that two states taxing the same property amounts to double taxation, the fact that property has been taxed in another state does not necessarily prohibit taxation in this state.  See Robinson, 59 N.H. at 525-26; see also Crosby v. Charlestown, 78 N.H. 39, 44 (1915) (reasoning that "[i]t would be a strange perversion of justice to hold that the rightful tax here must be abated because the assessors of some other state have put the property on the list for taxation there, or because the owner has seen fit to pay the tax there assessed").  Rather, the appropriate inquiry in such circumstances is to determine in what state the property is taxable.  Robinson, 59 N.H. at 526.

[¶18] As we have discussed, RSA 77:3 imposes taxes on the interest and dividends earned by residents.  A person may live in more than one place, but he or she can be a resident of only one state.  See Casey v. N.H. Sec'y of State, 173 N.H. 266, 273 (2020) ("[A]lthough a person may live in more than one place during any year, they can have only one 'residence' within the meaning of RSA 21:6-a.").  Here, we have affirmed the trial court's determination that the Morrises were residents of New Hampshire between June and December 2017.  Therefore, the Morrises' interest and dividends were properly taxable in New Hampshire for that six-month period, and no credit need be given for taxes paid elsewhere.  We agree with the trial court that "[t]o the extent the Connecticut tax authorities wrongfully levied a tax on the Morrises' income on which they are responsible for New Hampshire taxes, it is not within this Court's authority to review or remedy that decision."

7

[¶19] We now consider the Morrises' argument that New Hampshire's interest and dividends tax scheme impermissibly discriminates against individuals engaged in interstate economic activity in violation of the dormant Commerce Clause of the United States Constitution.

[¶20] The Commerce Clause of the United States Constitution grants Congress the power to "regulate commerce . . . among the several states." U.S. CONST. art. 1, § 8, cl. 3. The United States Supreme Court has interpreted the Commerce Clause to imply a negative command, known as the "dormant Commerce Clause," which prohibits certain state taxation even when Congress has failed to legislate on a subject. See Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179 (1995). Among other things, the dormant Commerce Clause prohibits a state from discriminating based on the interstate nature of a transaction. See Comptroller of Treasury of MD. v. Wynne, 575 U.S. 542, 549 (2015). Accordingly, a state "may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." Id. (quotation omitted). In Wynne, the Supreme Court held that a state's tax on personal income was subject to the restrictions of the dormant Commerce Clause, and invalidated Maryland's personal income tax scheme after determining that it was "inherently discriminatory and operate[d] as a tariff." Id. at 565. The Supreme Court articulated and applied the "internal consistency test," which "helps courts identify tax schemes that discriminate against interstate commerce" by looking "to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." Id. at 562. The Supreme Court explained:

> By hypothetically assuming that every State has the same tax structure, the internal consistency test allows courts to isolate the effect of a defendant State's tax scheme. This is a virtue of the test because it allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes . . . . The first category of taxes is typically unconstitutional; the second is not. . . . Tax schemes that fail the internal consistency test will fall into the first category, not the second: Any cross-border tax disadvantage that remains after application of the test cannot be due to tax disparities but is instead attributable to the taxing State's discriminatory policies alone.

Id. at 562-63 (quotations, citations, and brackets omitted).

8

[¶21] The tax scheme at issue here taxes interest and dividends earned by residents of New Hampshire for any part of the taxable year. See RSA 77:3, I(a). As we have discussed, DRA applies the six factors set forth in Rule 902.01 to determine residency for tax purposes. If this framework were applied "by every State in the Union" it would not "place interstate commerce at a disadvantage as compared with commerce intrastate," Wynne, 575 U.S. at 562, because, pursuant to the statutory and regulatory scheme, to be taxed as a resident, an individual must intend to establish residency in New Hampshire through an "ongoing physical presence within New Hampshire, which is not transitory in nature," as demonstrated by the enumerated factors. See N.H. Admin. R., Rev 902.01. These factors guard against double taxation because they determine whether an individual is a resident of one state, to the exclusion of all others. See RSA 21:6. Although a person may live in more than one place, he or she can have only one "residence." See Casey, 173 N.H. at 273.

[¶22] We disagree with the Morrises that the application of the tax structure to them was unconstitutional because they "merely" owned a house and took only "preliminary, ministerial steps toward establishing residency." The evidence was to the contrary. For example, when the Morrises registered to vote in New Hampshire, each signed an affidavit which read in part that they understood "that a person can claim only one state . . . as his or her domicile at a time," and that by registering, they "acknowledg[ed] that [they were] not domiciled or voting in any other state." In addition, the Morrises obtained New Hampshire drivers' licenses. Registering to vote in New Hampshire and obtaining drivers' licenses in New Hampshire are not minor steps one takes in contemplation of changing residency, but, rather, steps that manifest an intent to change legal residence effective immediately. Cf. N.H. Admin. R., Rev. 902.04 (creating presumption that any person who claims to be a "resident of New Hampshire to any state agency or political subdivision of New Hampshire, shall be deemed . . . [a] resident of New Hampshire for purposes of taxation of income . . . .").

[¶23] We now consider the Morrises' contention that the trial court erred when it declined to rule on their argument that DRA imposed a tax on Mr. Morris' reasonable compensation rather than on his interest and dividends. The Morrises raised this issue in their complaint, and Mr. Morris testified at trial that the income at issue was compensation for services and not interest and dividends, but the Morrises did not make this argument in their post-trial brief. The trial court found that the Morrises had not developed the claim beyond their complaint and therefore declined to rule on it. We have reviewed the record, and conclude that the trial court did not err when it ruled that the argument was insufficiently developed to justify ruling. See Lonergan v. Town of Sanbornton, 175 N.H. 772, 780 (2023) (declining to address argument not sufficiently developed in the brief).

9

[¶24] The Morrises also argue that the trial court erred when it declined to abate the assessed penalties and interest. The failure to pay penalty "shall not be applied in any case in which the failure to pay was due to reasonable cause and not willful neglect of the taxpayer." RSA 21-J:33, I (2020). To determine whether a taxpayer acted with "reasonable cause and not willful neglect," the question is "whether the filer's reason for so acting was objectively reasonable under the circumstances." Appeal of Keith R. Mader 2000 Revocable Trust, 173 N.H. 362, 369 (2020) (quotation omitted). This standard requires the taxpayer to "show that, despite exercising ordinary business care and prudence, it was not reasonably possible" to have complied with the statutory requirements and "further show that he or she was not recklessly indifferent" to the requirements with which he or she failed to comply. Id. at 370.

[¶25] The Morrises argue that "[g]iven all of the Connecticut facts recited in [their] brief, there was most certainly reasonable cause to conclude that New Hampshire was not the [Morrises'] principal place of physical presence for the indefinite future, to the exclusion of Connecticut." (Emphasis omitted.) We disagree. As DRA points out, the Morrises asserted in affidavits their intention to establish residency in New Hampshire and made multiple prepayments related to their tax liability. On this record, the Morrises cannot meet their burden of proving that their failure to pay was due to "reasonable cause," and we conclude that the trial court did not err when it declined to abate the assessed penalties and interest.

[¶26] In light of our decision affirming the trial court's rulings, we conclude that the trial court did not err when it denied the Morrises' request for attorney's fees because the Morrises were not the prevailing party in this action. See RSA 21-J:28-b, VI (2020) (superior court "may award reasonable costs and attorney's fees to the prevailing party, provided the prevailing party shows substantially unjustified action").

[¶27] We have considered the Morrises' argument that the superior court was required to enter judgment in their favor because DRA did not include a counter-affidavit with its objection to the Morrises' motion for summary judgment and find it to be without merit, warranting no further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.

10